WHITTLESEY *against* McMAHON and others:

#### IN ERROR.

*A*, the wife of *B*, in 1811, received lands by gift from her father, of the value of 1000 dollars, which were sold, and the avails vested in other lands in her name. Several subsequent sales and reinvestments were effected, in the same manner. On the last sale, which was in *March*, 1821, notes were taken for the purchase money, payable at a future period; which were retained by her, in her private repository, until her death, in *August*, 1821. *B* afterwards found these notes, and disposed of them for his own benefit; and in consideration thereof, and not with intent to defraud his

creditors, he, on the 15th of *February*, 1828, purchased, for the benefit of the children of *A*, a piece of land of the value of 156 dollars, and had it conveyed by the vendor to them; this being the only property purchased for their benefit from the avails of *A*'s real estate.   About six weeks before this transaction, *B* became indebted to *C* in the sum of 200 dollars, and was then also largely indebted to others and insolvent, and has ever since continued so to be.   In *September*, 1830, *C*, having obtained a judgment on his debt against *B*, took out execution, and had it levied on the land so conveyed to the children of *A*.   On a bill in chancery, brought by *C*, to have his title perfected against them, it was held, 1. that such notes were, at all times, the absolute property of *B*, the husband; 2. that *B* being largely indebted and insolvent, could not take this property, which of right belonged to his creditors, and vest it in the heirs of *A*; 3. that as the legal title of the land was never in *B*, the aid of a court of chancery was necessary and proper; and consequently, the bill was sustained.

THIS was a bill in chancery, brought originally to the county court, to obtain the legal title to certain real estate, on which the plaintiff had levied an execution.

On the 1st of *January*, 1828, *Constantine McMahon* was indebted to the plaintiff in the sum of 200 dollars, for which he gave his promissory note, payable on demand, with interest. He was, at this time, largely indebted to other creditors and insolvent, and has ever since continued so to be.   On the 16th of *July*, 1829, he assigned his property to a trustee, for the benefit of his creditors.   On the 1st of *March*, 1830, the plaintiff commenced a suit on said note, and attached a piece of land, as the property of said *Constantine*, which had not been embraced by the assignment.   In *September*, 1830, the plaintiff obtained judgment in such suit, for the sum of 205 dollars, 26 cents, for which he took out execution and had it levied on the land attached, containing about six acres, which was appraised at 156 dollars.

The history of this piece of land, so far as it relates to the present suit, is this.   *Constantine McMahon* intermarried with *Lydia Brinsmade*, the daughter of *Daniel S. Brinsmade*. The latter soon afterwards, *viz.* in *November*, 1811, for the consideration of natural affection, conveyed to said *Constantine* and wife, as tenants in common, 47 acres and 3 roods of land; which the grantees, in *September*, 1816, sold and conveyed, for the consideration of 1000 dollars, to *William Fenn*, and took his notes for the amount.   On the same day, and as part of the same transaction, they purchased of *Abner* and *Simeon Mitchell* a farm of 100 acres, and took a conveyance thereof,

for the sum of 1000 dollars, which they paid, by an assignment of *Fenn's* notes.    On the death of *Daniel S. Brinsmade*, said *Lydia*, as his heir or devisee, became vested with a title in fee to 10 acres of other lands, of the value of 550 dollars ; which she, with her husband, soon afterwards, *viz.* on the 11th of *April*, 1818, exchanged, by deed, with *Abner Mitchell*, for 24 acres of land, the deed of which was taken to her alone. The last-mentioned piece of land they sold, on the 6th of *March*, 1819, to *Ezekiel Newton*, for the sum of 550 dollars ; and with the avails of this sale, they purchased, on the 1st of *May*, 1820, of *Samuel Frisbie*, 17 acres of land, adjoining said 100 acres purchased of *Abner* and *Simeon Mitchell*, taking the deed to her alone.    On the 20th of *March*, 1821, they conveyed the last-mentioned piece of land, and also the most valuable part of said 100 acres, being about 68 acres thereof, to *Isaac*, *Daniel* and *Sherman Hartwell*, for the sum of 1062 dollars, for which the purchasers gave their separate notes. Two thirds of the avails of this sale were, at that time, received, by said *Lydia*, as her share thereof, and were by her retained, in her private repository, until her death, which took place on the 21st of *August*, 1821.    Between the time of the last-mentioned sale and of his wife's death, he made an attempt to reinvest her share of the avails in other real estate, to be conveyed to her, which proved ineffectual.    After her decease, said *Constantine* found said notes, which were payable at a future period, and disposed of them for his own benefit ; and in consideration of his having so received and appropriated to his own use and benefit the avails of his wife's real estate, and not for the purposes of defrauding the plaintiff or any other creditor, he afterwards, *viz.* on the 15th of *February*, 1828, purchased of *Andrew Hine*, jr., for the benefit of *Frederick T.* and *Mary Rebecca*, her only children and heirs at law, said six acres of land, on which the plaintiff's execution was subsequently levied, and procured a deed thereof to them.    This, which was of the value of 156 dollars, and no more, was the only property purchased for their benefit from the avails of the real estate so disposed of.

These facts being found, the county court dismissed the bill with costs.    The plaintiff thereupon brought a writ of error in the superior court ; which was reserved for the consideration and advice of this court.

*Litchfield,*
June, 1834.

Whittlesey
*v.*
McMahon.

*P. Miner* and *Fenn*, for the plaintiff, contended, 1. That choses in action accruing to the wife during coverture, vest absolutely in her husband. *Fitch* v. *Ayer*, 2 *Conn. Rep.* 143. *Griswold* v. *Penniman*, 2 *Conn. Rep.* 564. *Barlow* v. *Bishop*, 1 *East* 432. *Connor* v. *Martin*, cited 3 *Wils.* 5. *Cornwall* v. *Hoyt*, 7 *Conn. Rep.* 420. 1 *Sw. Dig.* 28. *Reeve's Dom. Rel.* 60, 1.

2. That a voluntary conveyance, made by a person indebted, at the time of such conveyance, is void as against the creditors of the grantor. *Salmon* v. *Bennett*, 1 *Conn. Rep.* 525. *Reade* v. *Livingston* & al. 3 *Johns. Ch. Rep.* 481. *Bayard* & al. v. *Hoffman* & al. 4 *Johns. Ch. Rep.* 450. 452. *Benton* v. *Jones* & al. 8 *Conn. Rep.* 186. *Parker* v. *Proctor*, 9 *Mass. Rep.* 390. *Sexton* v. *Wheaton* & ux. 8 *Wheat.* 229. *Bennett* v. *The Bedford Bank*, 11 *Mass. Rep.* 421. 2 *Kent's Com.* 441. n. 442.

3. That where one purchases land and pays for it, and takes a conveyance in the name of another, a *trust* results to the purchaser. *Boyd* v. *McLean* & ux. 1 *Johns. Ch. Rep.* 582. *Botsford* v. *Burr*, 2 *Johns. Ch. Rep.* 405. 2 *Madd. Chan.* 98. 101. 2 *Sw. Dig.* 112. If the purchase is in the name of a *child*, it will, in ordinary cases, be considered as an advancement ; but where the grantor is indebted at the time, it will be void. *Sexton* v. *Wheaton* & ux. 8 *Wheat.* 229. *Parker* v. *Proctor*, 9 *Mass.* 390. 2 *Kent's Com.* 241.

4. That where a creditor has done all he can at law, to perfect his title to equitable property, equity will lend its aid. *Bayard* & al. v. *Hoffman* & al. 4 *Johns. Ch. Rep.* 450. *Brinkerhoff* & al. v. *Brown* & al. 4 *Johns. Ch. Rep.* 671. *McDermutt* & al. v. *Strong* & al. 4 *Johns. Ch. Rep.* 687. *Spader* & al. v. *Davis* & al. 5 *Johns. Ch. Rep.* 280.

*T. Smith* and *O. S. Seymour*, for the defendants, insisted, 1. That from the facts of the case, it was perfectly apparent, that Mrs. *McMahon* had been induced to part with her property, from time to time, and to join in conveyances of it with her husband, under an expectation and with an understanding that the avails of her property should be secured to her, by investment in other real estate.

2. That during the life of his wife, *Constantine McMahon* was under an obligation to fulfil this expectation of his wife ;

and this obligation is sufficient to support a conveyance from him to her of property equal in value to the property parted with by her. 2 *Kent's Com.* 166. 173. 174. *Livingston* v. *Livingston,* 2 *Johns. Ch. Rep.* 537. Lady *Arundell* v. *Phipps,* 10 *Ves.* 139. 145. *Drury* v. *Mann,* 1 *Atk.* 188. *Ward* v. *Shallet,* 2 *Ves.* 16. *Chambers* v. *Caulfield,* 6 *East* 244. *Moor* v. *Rycault, Prec. Chan.* 22. *Brunsden* v. *Stratton, Prec. Chan.* 520. *Middlecome* v. *Marlow,* 2 *Atk.* 519. *Bullard* v. *Briggs,* 7 *Pick.* 533.

3. That this consideration is good for a conveyance to the children of Mrs. *McMahon. Rob. Fr. Con.* 266. 268. 269. 270. *Livingston* v. *Livingston,* 2 *Johns. Ch. Rep.* 537. *Bullard* v. *Briggs,* 7 *Pick.* 541. per *Parker,* Ch. J. *Rich* v. *Cockell,* 9 *Ves.* 369. *Draper,* admr. v. *Jackson* & ux. 16 *Mass. Rep.* 480.

BISSELL, J. The only question is, whether upon the facts disclosed on the record, the county court erred in dismissing the plaintiff's bill.

Upon the facts stated in the bill, and which have not been negatived, by the finding of the court, there would seem to be no doubt, that the plaintiff would be entitled to the relief sought. It is stated, and not denied, that the lands, upon which the plaintiff's execution was levied, were purchased by *Constantine McMahon,* at a time when he was deeply indebted, and a bankrupt ; and that he procured the conveyance to be made to the defendants, his minor children. Were there nothing more in the case, there could be no question, that these lands would be open to the creditors of *Constantine McMahon.* For although it is not found, that the conveyance was so made, with the intent to defraud creditors, and to keep the lands so conveyed out of their reach ; yet the legal inference of fraud would attach to the transaction, and would be irresistible ; because it would be apparent, that whatever consideration was paid for the land would be withdrawn from a fund to which the creditors had an equitable title, and which ought to have been applied to the payment of their debts. So far as their rights are concerned, the case would stand on the same ground, as though *Constantine McMahon* had been the owner of the lands, and for no consideration, other than that of natural affection, had conveyed them to his children. And it

is too clear to admit of discussion, that such a conveyance would be fraudulent and void, as against creditors. For, in all cases, where such conveyances have been supported, they have been sustained, on the ground that the grantor was not considerably indebted, or at least, was not insolvent, at the time of the conveyance.

In *Salmon* v. *Bennett*, 1 *Conn. Rep.* 525. which is a leading case in this state, on this subject, the rule is thus laid down : " But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed, at the time, and on the eve of a bankruptcy ; or if the value of the gift were unreasonable, considering the condition in life of the grantor, disproportioned to his property, and leaving a scanty provision for the payment of his debts ; then such conveyance will be void as to creditors."

In this view of the case, then, it is unquestionable, that these lands would be liable to the creditors of *Constantine McMahon.* But inasmuch as the legal title was never in him, it becomes necessary for the plaintiff to resort to a court of chancery, in order to secure the title, and thus to give effect to the levy of his execution.

We are then brought to inquire, whether the facts found by the court below, and placed upon the record, although not involved in the bill and answer, are such as to redeem the case from the operation of the general principle ?

It appears from the finding of the court below, that the wife of *Constantine McMahon*, and the mother of these defendants, inherited from her father, lands of greater value than those now in question. The lands thus inherited by her, were sold ; and the avails vested in other lands, in her name. A number of conveyances were subsequently made, and in all cases, where the avails of the wife's lands were re-invested in real estate, the deeds were taken to her, and in her name. The last sale of her lands was in 1821 ; and the avails of that sale were never invested in other lands, although an ineffectual attempt to do so was made. The notes, however, which were the fruits of the sale, were made payable to her, were in her custody, and in a manner, subject to her controul, until her death, which took place in the same year. Immediately afterwards, the husband took possession of the notes, collected them, and appropriated the avails to his own use.

*Litchfield,*
June, 1834.

Whittlesey
*v.*
McMahon.

And here, it may be remarked, that these notes, from the time they were given, were the absolute property of *Constantine McMahon.* He might have sued upon and recovered them, in his own name, either during the life of the wife, or after her decease. *Griswold* v. *Penniman,* **2** *Conn. Rep.* 143. *Beach* v. *Norton,* 8 *Conn. Rep.* 71. And in appropriating them to his own use, in the manner he has done, he subjected himself to no accountability to these defendants, either at law or in chancery.

This, together with his other property, constituted one entire fund, upon which he did business and gained a credit. And in this manner, he has gone on, for seven or eight years, and until the property is dissipated, and he has become a bankrupt. Can he, now, make a settlement on his children, at the expense of his creditors? May he take any of that property, which really belongs to them, and vest it in these defendants, on the ground of any supposed equity in their favour?

It is confidently believed, that there is no case which goes so far. It is very clear, that the authorities relied upon do not sustain the principle. They do indeed prove, that a settlement made before marriage, will not, if reasonable, be set aside in favour of creditors; because marriage is a valuable consideration. Neither will a settlement made after marriage, where the consideration was the payment of money, as a portion. *Drury* v. *Mann,* 1 *Atk.* 188.

And whenever the husband, or his assignees, are obliged to resort to a court of chancery, in order to obtain the wife's portion, or a legacy left her, that court will refuse its aid, until a suitable provision be made for the wife.

But the case at bar does not fall within either of the principles above stated. The husband has received and expended his wife's property; and it is not found, that there was even a post-nuptial agreement, that he should make any settlement, either upon her or her children. It is, then, the naked case, where a husband has received and expended his wife's fortune; and upon the eve of a bankruptcy, makes a voluntary settlement upon his children. Such a settlement, we have seen, is void against creditors.

I would, therefore, advise the superior court, that there is manifest error in the judgment of the county court.

The other Judges were of the same opinion, except PETERS, J., who was absent.

Judgment to be reversed.