## BURR *vs.* SHERWOOD.

*In the matter of the estate of* SARAH BENNETT, *deceased.*

A QUESTION as to the distribution of the personal estate of a married woman, arising between her administrator and the administrator of her deceased husband, determined by the law of Connecticut, where the parties were married and were domiciled at the time of their death.

By the law of Connecticut, the personal estate of a married woman dying intestate, is distributed among her next of kin, and does not pass to her husband.

At common law, *choses* in action and stocks of the wife, whether acquired before or after coverture, survive to the wife, unless reduced into possession by the husband in his life-time. By the law of Connecticut, personal property accruing to the wife during coverture, including *choses* in action, vests immediately and absolutely in the husband, and if he dies without reducing the same into possession, his administrator is entitled.

A receipt of dividends on stock standing in the name of the wife, only reduces the dividends into possession, and not the stock.

The legal title to the assets of a testator is in his executor until distribution, and the title of stock transferred to a married woman after coverture, in satisfaction of a general legacy vested before coverture, accrues after coverture. The time of the transfer is the time the title accrues, although the consideration of the transfer was previously vested.

The transfer of stock is governed by the *lex loci* as to the forms of the transfer, but not as to the rights of parties or as to the legal effect of a transfer when correctly made.

Where a married woman, domiciled in Connecticut, having before marriage a vested right in the residuary estate of her deceased grandfather, after coverture received, in satisfaction of such portion, a transfer of bank stock in the city of New York, and her husband drew the dividends, but never reduced the stock into possession, nor administered on her estate, though he survived her—*Held*, that by the law of their domicil, the property vested in the husband at the time of the transfer, and that his administrator was entitled to the proceeds for distribution among his next of kin.

CHARLES HAWLEY, *for petitioner.*

I. The administrator of the wife of John B. Bennett is entitled to the proceeds of certain shares of stock in the Union Bank, in the city of New York, belonging to Daniel Nash, her grandfather. This stock was a part of the residue of his

estate, to which his grandchildren were entitled on the decease of his widow.

II. The case is to be determined by the law of Connecticut, where the parties were domiciled. The property accrued before Mrs. Bennett's marriage, though it was transferred to her after coverture. *Story's Confl. of Laws, note to* § 388.

III. At Common Law, on the dissolution of coverture, the property goes to the next of kin of the wife, whether she survive her husband or not. There are no statutory provisions in the State of Connecticut, changing this rule, and giving the husband the wife's personalty. 2 *Bl. Com.* 438–439 ; *Co. Litt.*, 351, *b.* ; 6 *Barn. &. C.*, 253 ; *Toller, Ex.*, 224 ; *Swift's Digest, p.* 27 ; *Reeve's Domestic Relations, pp.* 12, 16, 17.

IV. There was no reduction of the property into possession by Mr. Bennett. The law never effects a reduction into possession. There must be some act done with an intention to reduce into possession. Mr. Bennett never changed the legal title of the stock. Putting the property into his wife's name was not a reduction into possession. *Wildman* vs. *Wildman,* 9 *Vesey.* 175 ; 20 *Pick.*, 524 ; 1 *Maddock's Ch.*, 384 ; *Wms. on Exrs.*, 557 ; 2 *Spence's Eq.*, 478–9.

V. The receipt of the dividends was not a reduction of the stock into possession. 5 *Johns, C. R.*, 196 ; *Hunter* vs. *Hallett,* 1 *Edwards, C. R.*, 388 ; *Stanwood* vs. *Stanwood,* 17 *Mass. R.*, 57 ; 1 *Rhode I. R.*, 11.

VI. The property having accrued to the wife, while she was a feme sole, and never having been reduced into possession by the husband during his life-time, the case does not come within the principle of any of the decisions in the State of Connecticut, declaring that personal property accruing to the wife during coverture, vests absolutely in the husband.

JOSIAH M. CARTER, *for the administrator of John B. Bennett.*

I. Stocks have a local *situs*, and the title to the stock in question, in this case, is regulated by the law of the State of New York. *Story's Confl. Laws*, §§ 315, 316; 2 *Kent's Com.* 430; *note d.* By the law of New York, the husband takes the wife's personalty, if he survive her, whether reduced into possession during her life-time or not.

II. If the question is to be determined by the laws of Connecticut, then by that rule, a transfer of bank stock to the wife during coverture vests the title *ipso facto* in the husband. *Griswold* vs. *Penniman*, 2 *Conn. R.*, 564; 2 *Conn.*, 143; *Morgan* vs. *Thames Bank*, 14 *Conn. R.*, 99; *Ecc. Soc.* vs. *Mather*, 15 *Conn. R.*, 588; *Hoyt* vs. *Seeley*, 18 *Conn., p.* 357; 19 *Conn. R.*, 171; *Revised Statutes, Conn.*, 1849, *p.* 178, § 171.

THE SURROGATE. The intestate was married to John B. Bennett, Nov. 13, 1825. At the time of her marriage, she was interested in the residuary estate of her grandfather, Daniel Nash, who had died shortly before, leaving a will. Certain property was reserved by the executors to pay an annuity bequeathed to the testator's widow, and after her decease in September 1827, distribution being made, eight shares of stock in the Union Bank, in the city of New York, were set apart and allotted to the intestate, Sarah Bennett, as her share of that portion of the residuary estate of her grandfather. The stock was transferred to her name in May, 1836, and her husband drew the dividends on it from that time until November, 1848, although she died in February, 1837. John B. Bennett died in September, 1852, never having administered on the estate of his wife, and a question now arises between his administrator and her administrator, whether the stock belongs to his estate or to her estate. On the facts as detailed, our law would give the property to the administrator of the husband, but all the parties being domi-

ciled in Connecticut, it is urged that the laws of that State control the case. That being the place where the contract of marriage was made and where it was dissolved by death, as well as the place of domicil, there appears to be no objection to the proposition. By the Connecticut Statute of Distributions, and the decisions under it, the case of a married woman, dying intestate, stands on the same footing as that of other intestates, her kindred succeeding to her personalty, and the husband having no interest, the provision of the statute 29, *Car.* 11, *c.* 3, that the Statute of Distributions shall not prejudice the title of the husband, not having been enacted in Connecticut. The right of Mrs. Bennett to a share of the estate of her grandfather, accrued before coverture, but the legal title to the assets was in the executor until distribution was made. Though the meritorious cause of the transfer existed before her marriage, yet the transfer was in fact made after; and though previous to the transfer, she had a general interest in the testator's residuary estate, she had no title to these particular shares of stock, until they were actually transferred to her, in satisfaction of her interest in the residue.

The husband, during his life-time, performed no act constituting a reduction of the stock into possession. His receipt of the dividends only reduced the dividends into possession, and not the stock. The only question, therefore, that I see requiring determination, is, whether it was necessary to reduce the stock into possession in order to make it the property of the husband. Though there have been conflicting decisions on this subject at Common Law, the English rule seems now to be well established, that choses in action, and stocks of the wife, whether acquired before or *after* coverture, survive to the wife unless reduced into possession by the husband in his life-time. (*Lawrence* vs. *Beverleigh*, 2 *Keb.*, 841; *Garforth* vs. *Bradley*, 2 *Vesey Senr.*, 676; *Richards* vs. *Richards*, 2 *B. & Adol.*, 452; *Philliskirk* vs. *Pluckwell*, 2 *M. & S.*, 395; *Nash* vs. *Nash*, 2 *Madd.*, 133; *Gaters* vs. *Madeley*, 6 *Mees & W.*, 423; *Sherrington* vs. *Yate-*

*Mees & W.* 855; *Hart* vs. *Stephens*, 6 *Q. B.* 937; *Scarpellini* vs. *Atcheson*, 7 *Q. B.*, 864.   *Scawen* vs. *Blunt*, 7 *Vesey*, 294.) But the case before me is to be decided according to the law of the State of Connecticut, and the decisions of her tribunals must be received as authority to show what the law there is.   In *Griswold* vs. *Penniman*, 2 *Conn.* 564, it was decided that a share of personal estate accruing to a married woman by the intestacy of her father, during coverture, belonged to the husband, though he died before her, and before distribution.   In *Cornwell* vs. *Hoyt*, 7 *Conn. R.*, 420, it was said that " a note to a wife is payable to the husband, and can be sued by him or *his representatives.*"   In *Beach* vs. *Norton*, 8 *Conn. R.*, 71, it was held that the husband, after his wife's death, might recover in his own name, a promissory note made to her during coverture.   In *Whittlesey* vs. *McMahon*, 10 *Conn.*, 137, the wife inherited lands after marriage, sold them, and took notes in her own name, which were disposed of by her husband after her decease.   The Court held, that the notes were his property, " from the time they were given ; he might have sued upon and recovered them in his own name, either during the life of the wife, or after her decease." In *Morgan* vs. *The Thames Bank*, 14 *Conn.*, 99, the wife, during coverture, received a transfer of stock in her name to satisfy a legacy accruing after marriage.   It was decided that the title, on the transfer, vested the stock immediately in the husband, the Court saying, " no rule is better established, than that personal property, accruing to the wife during coverture, *including choses in action*, vests immediately in her husband, on the principle that husband and wife are one in law, and her existence, in legal consideration, is merged in his."   *Baldwin* vs. *Carter*, 17 *Conn.*, 208, shows that the husband does not take as administrator or as " heir," but in virtue of his marital right.   In *The Fourth Ecclesiastical Society in Middletown* vs. *Mather*, 15 *Conn.*, 587, the wife having lands *before marriage*, sold them during coverture, and took a promissory note in her own name; and it was held that the note, when made, became the property

of the husband, although he had not taken it into posses-
sion before the wife's decease. The Court observed "it is
quite unnecessary for us now to examine the state of the
Common Law, regarding the right of the husband to *choses
in action*, accruing to the wife during coverture, and whether
the husband may sue alone, or must, or may join his wife as
plaintiff in an action to recover them, because our Courts,
by a uniform course of decisions, founded, as they believe,
upon the principles of Common Law, have holden that such
a *chose in action* vests absolutely in the husband, and *such
is the settled law of this State*." (*See* 1 *Swift's Dig.*, 93;
*Reeves Domestic Relations*, 60; *Fitch* vs. *Ayer*, 2 *Conn.*, 143;
*Winton* vs. *Barnum*, 19 *Conn.*, 171.)

This then is the law of Connecticut, and it is useless to
refer to decisions in the English Courts or elsewhere, in
conflict with it. Nothing remains but to apply the law as
we find it, to the case in hand. It seems to have been ad-
mitted, in *Griswold* vs. *Penniman*, that as to property be-
longing to the wife before marriage, being choses in action,
if the husband does not reduce them into possession during
coverture, " they survive to the wife, if she outlives him, or
to her administrator, if she does not." The only question
remaining open, therefore, is, whether the eight shares of
Union Bank Stock, in controversy, accrued to the wife
during coverture. If they did, they immediately became
the property of the husband; if they did not, they remained
her property, and passed on her decease to her administra-
tor, the husband not having reduced them into actual posses-
sion before his death. I think the date of the transfer of
the stock settles this point. Mrs. Bennett's interest in her
grandfather's estate accrued before coverture, and if that had
remained open and unsettled till after her decease, it would
have passed to her administrator. But that undivided share
or interest was terminated after her marriage, by a partition,
division, or distribution. It was extinguished and satisfied
by her portion being allotted to her in severalty. Having
ceased to exist, that undivided interest is not now the subject

of controversy. She took, in satisfaction, or in lieu of her undivided interest in the whole estate, an absolute right in the entirety of a portion. Again, although previous to the transfer she had an interest in her grandfather's estate, yet the actual legal title and possession were in the executors, and consequently her legal title to the particular stock in question accrued by the transfer, and at the instant of the transfer, although the consideration accrued previous to coverture. In this respect the case is analogous to that presented in the *Ecclesiastical Society* vs. *Mather*, where the wife having lands before coverture, sold them after marriage, and took a note in her own name. The property there was actually her own when she married, and yet the note was held to be her husband's, because the new form in which she had placed her property was such as by the rule of law vested it immediately in him. It seems to me that it cannot make any difference whether the meritorious cause or consideration leading to the transfer of the personal property to the wife, attached before or after coverture, the principle of law which regulates these transactions being applicable to the transfer, or if a note, to the making of the note, and not to the meritorious cause of the transfer, or to the consideration of the note.

It was suggested on the argument, that it might be worthy of consideration, whether the transfer of stock is not governed by the local law, so as to oust the *lex domicilii.* That is true in one sense, but the doctrine relates to the *forms* of transfer directed by the local law, and not to the rights of parties, or to the legal effect of a transfer when correctly made. (*Story's Conflict Laws*, § 383; 2 *Kent. Com.*, 430; 3 *Burge Com.*, 750-2.) The decree must direct payment to Mr. Bennett's administrator for distribution among his next of kin, according to the laws of Connecticut, and treating the stock in dispute as his property.