## C. E. SIMMONS ET AL. *v.* INGRAM & JENNINGS ET AL.

1. CHANCERY PRACTICE. *Bill to subject property held by wife. Heirs of deceased husband as parties.*

   In a suit in chancery by the creditors of a decedent to subject to their demands land bought by him and which he has fraudulently caused to be conveyed to his wife, his heirs are neither necessary nor proper parties to the bill.

2. FRAUDULENT CONVEYANCE. *May be attacked by whom. Existing creditor Subsequent creditor.*

   A conveyance made to defraud existing creditors, cannot be set-aside at the instance of a subsequent creditor, where it does not appear that the debtor intended to defraud such subsequent creditor, nor that the latter gave credit upon the faith of the debtor's ownership of the property conveyed.

3. CHANCERY. *Pleading and practice. Decree, whether against individual or administrator.*

   C. and D. filed a bill in chancery against I. as administrator of the estate of J., deceased, to recover the value of some personal property, which it was

alleged had belonged to them and had been sold by the defendant as such administrator, together with the property belonging to the estate of the decedent, the whole having been previously appraised as the property of the estate. A decree was rendered, which, though establishing the facts alleged in the bill, required that the money due the complainants should be paid by "the defendant," without the addition of words describing him as administrator, and without in any manner fixing a charge upon J.'s estate. *Held* that the decree was against I. individually, and not as administrator.

4. FRAUDULENT CONVEYANCE. *Holder of title, when a trustee for creditors Measure of their rights as to the property.*
Where one indebted beyond his ability to pay, purchases land with his own means and causes the title thereto to be conveyed to another, the law conclusively presumes that his purpose is to defraud his creditors. The intention of the debtor, in such case, being unlawful, no trust arises in his favor, but the law impresses upon the holder of the fraudulent title, the character of a trustee for the benefit of the creditors whom the debtor has sought to defraud; and the property thus held may be subjected to the demands of such creditors to the full extent of its value, without regard to the amount of money invested in it by the debtor.

5. SAME. *Title in wife. Bill by creditor. Claim of dower.*
Where an insolvent debtor has purchased land with his own means and caused the title to be conveyed to his wife, and his creditors file a bill to subject the property to the payment of their demands, the wife is not entitled to dower in such land.

APPEAL from the Chancery Court of Holmes County.
Hon. R. W. WILLIAMSON, Chancellor.

Ingram & Jennings, who were creditors of the estate of I. M. Simmons, deceased, upon a judgment founded upon his promissory note given in May, 1874, filed the bill in this cause, in March, 1881, against C. E. Simmons, the widow of the deceased, W. H. Simmons, his son, and sole heir, and W. S. Smith, the administrator of his estate, for the purpose of subjecting to the payment of the complainant's judgment a certain tract of land, which, it was alleged, I. M. Simmons, in his lifetime, had bought and paid for with his own means, but had caused the title thereto to be conveyed to his wife, C. E. Simmons, for the purpose of defrauding his creditors. The bill also alleged that I. M. Simmons was, at the time of the purchase and conveyance of the land, on the 3d of May, 1872, largely indebted and insolvent, and so continued to the

time of his death, in 1875, when he left an estate scarcely more than sufficient to pay the expenses of administration.

Crosby S. Simmons and D. Jett Simmons were admitted as co-complainants to the bill, upon their petition, alleging that I. M. Simmons, deceased, was in his lifetime indebted to them on a decree rendered in November, 1867, for $3,342.57, and in the further sum of $1,362.08, received by him as their guardian on the 29th of May, 1872, which said sums, with interest, remained unpaid. W. H. Simmons demurred to the bill on the ground that he had been improperly made a party thereto. The demurrer was overruled. C. E. Simmons answered the bill denying that the conveyance referred to in the bill was made by her deceased husband for the purpose of defrauding his creditors, or that the land was paid for with his means, but averring that her money was used to pay for the land, and that the purchase was made for her and the land rightfully belonged to her. The court rendered a decree in favor of the complainants, declaring the land above mentioned liable for the payment of the several debts of the complainants, and ordering a sale thereof, and the application of the proceeds to such payment, in case the defendants should fail to pay the debts due the complainants on or before a certain named day. From that decree the defendants appealed.

*Hooker & Wilson,* for the appellants.

Assuming that it is established that the property was paid for with the money of I. M. Simmons, can this property, in this proceeding, and under the allegations of this bill, be subjected to the payment of complainant's debts. There are only two methods by which the court can possibly subject this property to the debts of I. M. Simmons. 1. By declaring the purchase a resulting trust in favor of I. M. Simmons and subrogating creditors to his rights. 2. That it was a voluntary or fraudulent gift of his property to his wife, and made with the intent to hinder, delay and defraud his creditors. In the first case, the property would be equitable assets and liable to his debts, no matter when contracted. In other words, it

would be his property and could be subjected to the payment of his debts. In the other case, however, only the existing creditors, at the time of the conveyance, those who were delayed and prejudiced by the gift, could complain, unless such conveyance was made with the further intent of defeating future creditors. To discuss these propositions in their order: Is there any resulting trust in favor of I. M. Simmons? No principle is better settled than that a purchase in the name of a wife is construed as an advancement, and not a resulting trust. 48 Miss. 100; 50 Miss. 24; Perry on Tr. Of course this presumption can be defeated by showing a contrary intention. But there is no fact shown, or attempted to be shown which evidences this contrary intention. The legal presumption is that the purchase was an advancement to Mrs. Simmons, and not a trust. The true test in this case is, could I. M. Simmons, under the evidence in this case, have asserted a resulting trust against his wife? If he could not, his creditors cannot treat this conveyance to Mrs. C. S. Simmons as a resulting trust. Clearly, the evidence utterly fails to show that I. M. Simmons could have treated this as a resulting trust. In the case of *Bernheim* v. *Burr*, 56 Miss. 151, the court say that they will treat the wife as a trustee *in invitum* and fasten a charge upon the property; but such trusteeship does not refer to the kind of trust here being discussed. The court then being unable to discover from the evidence that there was a resulting trust in this land which I. M. Simmons or his creditors could enforce, or that it was equitable assets of the estate of I. M. Simmons, it remains to inquire whether the land could be sold under the second proposition. The court will bear in mind that these are subsequent creditors. The conveyance, according to the authorities, does not come technically within the Statute of Frauds, but the same rules and principles govern courts of equity, in dealing with this class of cases. The conveyance is not absolutely void. The grantee has title to the property; it, however, being liable to be subjected to the payment of the debts of the party whose means

has been so invested, existing at the time the conveyance was made. There is neither rhythm nor reason in saying that the grantee will not only be held as trustee for the debts then existing, but also those which may in the future be contracted, unless such conveyance was made with the express purpose and intent of swindling such future creditors. We cannot perceive upon what principle these subsequent creditors can ask that the grantee be held as a trustee for their benefit. They make no advance upon the faith of his ownership. There was never any apparent ownership by the debtor to deceive them. We cannot perceive that the rights of subsequent creditors could be any greater in this class of cases than in those coming within the express terms of the Statute of Frauds. In the case of *Winn* v. *Barnett*, 31 Miss. 658, a conveyance by the vendor to the wife of Winn (an analogous case to the one at bar), the court say: "The principle which lies at the foundation of every judicial proceeding at the instance of creditors to set aside a fraudulent disposition of property by their debtor, is either that the debts were contracted, or the credit gained upon the faith of such property." And again, in speaking of such conveyances, say that "voidable" is the correct word to use, and those creditors who are hindered, can alone avoid them. "It must follow, therefore, that persons who were not creditors at the time defendant's title accrued were not and could not be defrauded, delayed," etc., in consequence of the transaction which led to the consummation of the wife's title. "It is true that it has been held in some cases that where a conveyance by a debtor was fraudulent in its inception as to his creditors at the time, it will be so treated as to subsequent creditors. But these cases rest upon one of two principles, the property was either so situated that it enabled the debtor to obtain credit upon the faith of it, or the fraudulent vendee was regarded as the trustee under the secret arrangement between the parties, and in virtue of such secret understanding bound, as far as his word or contract could bind him, to account to the fraudulent vendor,

and hence the creditor to be substituted to what was treated as the substantial interest of his debtor, and subject the property to the payment of his debts. In the present case, however, it is neither shown that the debts were contracted on the faith of the property, nor that the defendant was in any manner a trustee for or accountable to her husband for the slaves." The facts of the two cases are similar, and the logic and principles of *Winn* v. *Barnett* cover the case at the bar like a blanket. In the case of *Bullit, Miller & Co.* v. *Taylor & Richardson*, 34 Miss. 908, the above view, that the husband might give his property to his wife for the purpose of saving it to his family, was adopted, and it was held that the registration of the deed was sufficient notice to subsequent creditors and purchasers. There are a number of authorities holding that if subsequent creditors can show that the deed is void as to the existing creditors, the deed would be void as to the subsequent creditors, but this doctrine *horsu* to the debtor is completely overthrown by the cases of *Winn.* v. *Barnett*, and *Bullit* v. *Taylor*, *supra*; *Prestidge* v. *Cooper*, 54 Miss., establishes the same doctrine, and, in fact, it is the language of the Statute of Frauds. Subsequent creditors stand in relation to this branch of fraudulent conveyances in exactly the same attitude as if the conveyance had been made by the husband to the wife. Perry on Tr., sect. 149, and notes. It remains to inquire whether this bill can be maintained as to the decree rendered in the case of Samuel West, next friend of the Simmons heirs, against I. M. Simmons, administrator of the estate of J. S. Simmons. Is this a personal decree against Simmons? He is sued as administrator, summoned as such, and answers as such. No individual liability was sought to be imposed on him in the suit; no relief is sought against him and no judgment could be had against him. As the administrator of one estate he is sought to be held liable for assets that went into his hands belonging to another estate. Under the pleadings a judgment against him in his individual capacity would have

been *coram non judice*, and void. He had reported the property as assets of his decedent, and it was the administrator, and not the individual, who was being sued. His liability, if any, was as representative and not as an individual. But if the decree of the lower court is correct in treating this property as equitable assets of I. M. Simmons' estate, then Mrs. C. E. Simmons was certainly entitled to dower in the property, and the title being in her, and she in possession thereof, her dower should have been assigned to her.

*Calhoon & Green*, on the same side.

It was error to overrule the demurrer of W. H. Simmons, the heir of I. M. Simmons. If I. M. Simmons had been alive he would not have been a necessary party, and certainly his heir was not a necessary party. *Leach* v. *Shelby*, 58 Miss. 687. The next question is, whether the decree against I. M. Simmons as administrator *de bonis non cum, testamento annexo* of —— Simmons, in favor of Crosby S. and D. Jett Simmons, for $3,342, rendered in 1867, is such a debt as would avoid a voluntary conveyance by I. M. Simmons. A judgment against an administrator imports no personal liability. On its face it is to be levied *de bonis testatoris* and not *de bonis propriis.* It is not a personal suit; it is representative. *Plene administravit* would not avail if there was any personal liability. Judgments against administrators ascertain the debt only as against assets to be administered. *Brodie* v. *Brickley*, 2 Rawle, 431. Personal judgments create debts against the person as well as his property. Judgments against administrators ascertain debts against the property only. The proceeding under which the decree in favor of Crosby and D. Jett Simmons was rendered was against I. M. Simmons in his representative capacity. I. M. Simmons individually was not a party to that proceeding. As administrator of Simmons he was accountable to Mrs. Anna A. Simmons' estate for the property sold by him as administrator. The record charges him as administrator, and the decree is against him as administrator. The record in this suit would not be competent evi-

dence of his individual liability.   If I. M. Simmons, in good faith, as administrator of Simmons, received the property, and sold it, and accounted to the court for it as administrator, then he was liable for its proceeds as administrator and not individually.   20 N. H. 411 ; 6 Pick. 198 ; 16 Mass. 97 ; 30 Ala. 48.   A reversal of this case must be had because the decree holds the land as assets of I. M. Simmons, deceased, and orders its sale for the whole amount of the debts set out in the O bill.   As the title was never in I. M. Simmons, the most which can be claimed for the fraud, if there was fraud, is to fix a charge on it for the amount he paid for it, $3,000, for this is the only damage done the creditors, either then existing or subsequently by the transaction.   See *Tyndall* v. *Carlisle*, 49 Miss 230 (holding that the land can only be held "to the extent of the means used by the husband ") ; *Winters* v. *Claitor*, 54 Miss. 347.   It is simply in the nature of a loan by an insolvent for purposes of speculation.   The loan may be reached and not the profits, and this is the only equity.   More would give creditors what the debtor never had.

*C. V. Gwin*, for the appellees.

1. Where a person is largely indebted, and, *a fortiori*, where he is insolvent, and makes a voluntary conveyance of the whole or a considerable part of his estate, or invests his money or a considerable part of it in land, taking the title in the name of another, then in legal presumption it is done *prima facie* to defraud creditors, both pre-existing and subsequent creditors.   *Henry* v. *Fullerton*, 13 Smed. & M. 631 ; *Vertner* v. *Humphreys*, 14 Smed. & M. 130 ; *Carlisle* v. *Tyndal*, 49 Miss. 234, 235 ; *Edmonson* v. *Meacham*, 50 Miss. 39 ; *Hutchinson* v. *Kelly*, 1 Rob. 123 ; *Winchester* v. *Charter*, 12 Allen, 606 ; *Bangard* v. *Block*, 81 Ill. 186 ; *Pratt* v. *Curtis*, 2 Low. 87–90 ; *Redfield* v. *Buck*, 35 Conn. 328.   It is the same with subsequent as with pre-existing creditors in this class of cases.   *Vertner* v. *Humphreys*, 14 Smed. & M. 130 ; *Winchester* v. *Charter*, 12 Allen, 606 ; *Markman* v. *Welsh*, 19 Pick. 231–237 ; *Pratt* v.

*Curtis*, 2 Low. 87–90; *Redfield* v. *Buck*, 35 Conn. 328. Because some of the cases above referred to are adjudications under the Statute of Frauds, I do not wish to be understood as endeavoring to bring this case within that statute. The Statute of Frauds has nothing to do with it. But a broader and more comprehensive principle of equity does reach and embrace it. Nevertheless, for the purpose of a just and proper analogy, the cases under the statute may, in some points of view, be safely relied on, for the statute is much like the equity — a little '' stouter, not quite so broad.''

2. If a debtor invest his money in land, and with a view to defraud his creditors takes the title thereto in the name of his wife or a third person, a court of equity will regard the wife as a trustee, the land as equitable assets of the husband, and subject them to the payment of his debts. 1 Perry on Tr., sects. 142, 149; *Bernheim & Co.* v. *Beer*, 56 Miss. 149; *Edmonson* v. *Meacham*, 50 Miss. 39; *Carlisle* v. *Tyndal*, 49 Miss. 234, 235; *Matson* v. *LeRow*, 6 Barb. 487; *McCartney* v. *Bostwick*, 32 N. Y. 53; *Elliott* v. *Horn*, 10 Ala. 348; *Abney* v. *Kingsland*, 10 Ala. 355; *Rucker* v. *Atell*, 8 B. Mon. 566; *Damaree* v. *Driskell*, 3 Blackf. 115; *Doyle* v. *Sleeper*, 1 Dana, 531. The land in this case is to be regarded as equitable assets in the hands of Mrs. Simmons for the payment of the debts of her husband — all his debts. In equity it is regarded as his land, and she as a trustee for his creditors, by reason of the fraud. If he were living to-day, a court of equity would say to him, that at a time when he was hopelessly insolvent, and yet expected to make other debts, he had invested every dollar in land, and caused the title to be taken in the name of his wife, without any valuable consideration passing from her. Until the contrary be clearly shown to be true, the law deems such acts, done under such circumstances, to be done with intent to defraud his creditors generally; with a purpose to secretly enjoy the property and elude his creditors. The transaction is colorable and false in contemplation of law until it is clearly shown to be real and in

good faith.    He enjoys the substantial benefits arising from
the purchase of land with his money.    Under the shell of a
legal title the forms of law hold off the creditors, but the
higher justice of a court of equity will tear the shell away
and subject the land, which in truth is his, to the payment of
his debts.    He may have wished to give it to his wife, but this
the law will not permit.    The law, even against his will,
(against the will of Mrs. Simmons,) makes her a trustee, and
will hold her as such until the *prima facie* presumption of a
fraudulent purpose arising from the facts in the case is clearly
overcome.    And what is the difference between Simmons liv-
ing and Simmons dead?    How is it that he may withhold
property, which a court of equity considers his at this day,
from the payment of a debt contracted on the 29th day of
May, 1872, and yet cannot withhold it from the payment of a
debt contracted on the 1st day of May, 1872.    There are
many cases under the Statute of Frauds where conveyances
may be held void as to pre-existing creditors, but not as to
subsequent creditors, perhaps ; but it is not necessary that the
debtor should convey his property to prevent its being taken
for future creditors, in order to enable subsequent creditors to
attack the conveyance for fraud ; it is sufficient if there be
fraud upon existing creditors, in all voluntary convey-
ances.    *Winchester* v.  *Charter*, 12 Allen, 606 ;  *Hutchin-
son* v. *Kelly*, 1 Rob. 123 ;  *Vertner* v. *Humphreys*, 14 Smed.
& M.  140, and the authorities heretofore referred to.
From the fact of Simmons being insolvent at the time he
bought the land and procured the title to be placed in the
name of his wife, the transaction is *prima facie* in fraud of his
creditors, both precedent and subsequent, and by reason of this
fraud a court of equity raises a trust, declares the land to be in
equity the property of Simmons for the payment of his debts
19 Perry on Tr. sects. 142, 149 ;  *Bernheim* v. *Beer*,
56 Miss. 149 ; *Edmonson* v. *Meacham*, 50 Miss. 39 ;  *Carlisle*
v. *Tyndal*, 49 Miss. 234, 235 ;  *Watson* v.  *Le Row*, 6 Barb.
487 ;  *McCartney* v. *Bostwick*, 32 N. Y. 53 ; *Elliott* v. *Horn*,

10 Ala. 348 ; *Rucker* v. *Atell,* 8 B. Mon. 566 ; *Demaree* v. *Driskell,* 3 Blackf. 115 ; *Doyle et al.* v. *Sleeper et al.*, 1 Dana, 531 ; *Abney* v. *Kingsland,* 10 Ala. 305.

3. Appellants contend that W. H. Simmons is an improper party to this suit, and in support of their proposition cite *Leigh* v. *Shelley,* 58 Miss. 687, and might have added *Taylor* v. *Webb,* 54 Miss. 36. Counsel fail to observe the difference, and to keep in view, as this court did in those cases, the distinction between necessary parties and proper parties. In these two cases the court simply says that a suit to set aside a fraudulent conveyance may proceed without making the administrator and heir of the fraudulant grantor parties thereto, and that is all it did say. In this suit, where debts were to be established and equitable assets of the intestate and ancestor applied to the payment of them, it was eminently proper, if indeed not necessary to make the administrator and heir parties; and, whether this be true or not, Mrs. C. E. Simmons cannot complain that it was done.

4. The decree on its face is personal against Simmons, and he is only named and described as administator in the pleadings for the purpose of showing how and under what circumstances the property of Anna B. Simmons had been sold. He got the money for which the property was sold, and claims and was allowed the amount adjudged against him as a credit against the estate of his intestate. It could not be a decree against him in his representative capacity in the sense that no personal and individual liability was decreed against him, for the reasons that (*a*) it was not a decree against him on account of any act done or omitted by his intestate ; (*b*) no cause of action whatever against his intestate, either *ex delicto* or *ex contractu*, is the foundation of the decree ; (*c*) neither the lands nor goods of the intestate can be taken in satisfaction of the decree ; (*d*) the sureties on his bond are not liable to pay the decree.

5. I have already sufficiently considered the right of Ingram & Jennings to maintain this suit, and shall not again

discuss it, even though they be regarded as subsequent creditors.    I wish only to say that the case of *Prestidge* v. *Cooper*, 54 Miss., is wholly in reference to subsequent purchasers, a class whose legal *status* as to matter like the present, is wholly different from that of subsequent creditors.

6. Neither this court nor the court below can pass upon any right of dower or homestead in Mrs. Simmons.

COOPER, J., delivered the opinion of the court.

The demurrer of the defendant W. S. Simmons should have been sustained.    His father, I. M. Simmons, never had any legal title to the land in controversy, nor did he have any equitable interest in it which a court of chancery would establish on an application by himself, or by any one claiming as a volunteer under him.    This defendant having neither a legal nor an equitable title which it was necessary to divest in behalf of the complainants, and not being subject to any personal decree in favor of complainants, was indifferent to the result of this suit and was neither a necessary nor a proper party defendant.    •

The evidence leaves no doubt of the insolvency of I. M. Simmons at the time he purchased the land and procured a conveyance of it to be made to his wife, and we concur in the conclusion reached by the chancellor, that the purchase-money of the land in controversy was paid by him and not by his wife.

The complainants Ingram & Jennings do no occupy the position of creditors entitled to question the validity of the conveyance.    Their debt was not existing at the time the purchase was made and there is an absence of any testimony that they were at all deceived by it, or gave credit to Simmons upon the faith of his ownership of the property.    The extent of the evidence is that the conveyance was taken to the wife to defraud the then existing creditors of the husband. In *Henry* v. *Fullerton*, 13 Smed. & M. 631, and *Vertner* v. *Humphreys*, 14 Smed. & M. 130, it was held that voluntary

conveyances were not necessarily void as to subsequent credi-
tors ; that the presumption of fraud arising from indebtedness,
or fraud in law might be repelled by proof of circumstances
negativing actual fraud ; but that if a subsequent creditor
could show fraud in fact, as against pre-existing creditors,
then the conveyance would be void both as to such creditors,
and as to those whose debts were subsequently incurred.
But these decisions were made before the adoption of the
Code of 1857, in which a different rule was enacted. Since
that time to make a deed void as to subsequent creditors
there must be proof of an intent to defraud them ; it is not
sufficient that there is an intent to defraud others whose debts
were in existence at the time. *Hilliard* v. *Cagle*, 46 Miss.
309 ; *Prestidge* v. *Cooper*, 54 Miss. 74.

The decree rendered by the Chancery Court in 1867 in
favor of the infant distributees of Anna A. Simmons for
$3,342.57 was a personal decree against I. M. Simmons, and
was not against him in his representative character as adminis-
trator of the estate of J. S. Simmons. In the proceedings
therein he was spoken of as administrator of J. S. Simmons,
to show the circumstances under which he had received and
converted the property of the estate of Anna A. Simmons,
but it was not attempted to fix any charge against the estate
which he represented ; the object was to have an adjudication
of the fact that a part of the funds in his hands had been
realized by a sale of property to which the complainants in
that case were entitled, and by the decree a debt was fixed
against him as an individual and not as administrator. As to
this debt the complainants Crosby and D. Jett Simmons
were existing creditors of I. M. Simmons at the date of the
conveyance to his wife and the land was properly subjected to
sale for its payment.

I. M. Simmons did not qualify as guardian to the com-
plainants Crosby and D. Jett until the 29th of May, 1872,
on which day he received and receipted for their propor-
tion of the proceeds of real estate sold. This was subsequent

to the purchase of the land and its conveyance to Mrs. Simmons, and as to this debt Crosby and D. Jett Simmons are subsequent creditors.

In *Carlisle* v. *Tyndal*, 49 Miss. 229, and *Bernheim* v. *Beer*, 56 Miss. 149, it was said that where a debtor purchased property, the title of which he caused to be invested in another for the purpose of defrauding his creditors, the creditor could proceed to subject it to the payment of his demand to the extent only of the funds of the debtor which had been invested in it. In neither of these cases was the point presented for adjudication, and we do not concur in the views indicated in the opinion of the judge who delivered the opinions.

Where property is purchased and the purchase-money paid by one, and the title taken to another, the law implies a trust in favor of him whose money is invested, because it presumes his intention to have been to enjoy the fruits of his purchase; where the title is taken in the name of a wife or child this presumption yields to that of an advancement, and no trust arises in favor of the purchaser. In these cases it is the presumed intention of him whose money has procured the property which governs and controls, and if a different lawful intent is shown by satisfactory evidence, the presumption yields and effect is given to it. But where one indebted beyond his ability to pay makes a voluntary conveyance of his estate, or purchases with his own funds property, the title to which is taken to another, the law conclusively presumes that his motive is to defraud those to whom he is indebted. In such cases the intention is unlawful and no trust can be based upon it; but the law for the protection of the rights of those who are attempted to be defrauded, impresses upon the fraudulent holder of the title the character of trustee for them. It is the duty and not the will of the purchaser which is the foundation of this trust, but the property upon which the trust is impressed is the property which the grantee holds. If the circumstances under which a trust arises are such that it exists in favor of the purchaser, whose money has been invested

in the property it is the whole of the property which is equitably his, and the holder of the legal title cannot retain it upon repayment of the price at which it was bought. If, in cases of such purchases in fraud of creditors, a trust is raised by law for their benefit, because money which is in equity theirs, or which the creditor is bound by law to appropriate to their demands, has been invested in the property, why should a different rule be applied? If the property on a sale fails to bring the amount invested in it by the fraudulent debtor, the fraudulent grantee cannot be required to make good the deficiency. If there is a depreciation in value after the purchase by the debtor, or if the purchase by him was an improvident one, the loss falls on the creditors. If on the other hand the purchase is an advantageous one, or the property increases in value, not by reason of the labor or at the expense of the trustee, why should he and not the creditors of the real purchaser derive the benefit?

A somewhat extended examination of the authorities has failed to discover any case in which it has been decided that the creditors of the fraudulent purchaser are restricted in subjecting the property to the amount of the purchase-money paid by their debtor.

To us it seems clear that property so purchased is itself held by the grantee as trustee for the benefit of the creditors of the purchaser, and may be subjected to their demands as fully as it might have been if the debtor had taken title to himself and subsequently conveyed the property for the fraudulent purpose of evading the payment of his debts. To this effect are the following among other authorities : *Doyle* v. *Sleeper*, 1 Dana, 531 ; *Whittlesey* v. *M'Mahon*, 10 Conn. 137 ; *Miller* v. *Wilson*, 15 Ohio, 108 ; *Croft* v. *Arthur*, 3 Dessau. 223 ; *National Bank* v. *Sprague*, 20 N. J. Eq. 13 ; *Smith* v. *Parker*, 41 Me. 452 ; *Corey* v. *Greene*, 51 Me. 114 ; *Dockray* v. *Mason*, 48 Me. 178 ; *Demaree* v. *Driskell* 3 Blackf. 115 ; *McDowell* v. *Cochran*, 11 Ill. ; *Bay* v. *Cook*, 31 Ill. 336.

The appellant, Mrs. Simmons, was not entitled to a home-

stead in the lands. It is not shown that the lands were occupied by her husband as a homestead at the time of the payment of the purchase-money by him, and it is shown that before his death he had removed therefrom.

Nor is she entitled to dower therein. The husband never had a title, legal or equitable, to the land, nor is there any trust raised by law in his favor. As to his creditors, Mrs. Simmons holds as trustee, not, however, because of any equity of the husband, but because of the equity of the creditors themselves. If the lands had been owned by the husband in his lifetime, and had been by him fraudulently conveyed, then, if upon a proceeding by the creditors the conveyance had been cancelled, the original title of the husband as between him and his creditors would have been restored. They would have then claimed to subject property to which he had the legal title, and having such title, his widow would be entitled to dower. But this case differs from that. Here the husband never had in his lifetime any title whatever, and as a necessary consequence, his widow cannot claim dower.

The decree is reversed and cause remanded for a decree in the court below in accordance with the views herein expressed.