LEMUEL D. SMITH v. THOMAS C. RATCLIFF ET AL.

1. EXEMPTION LAWS; HOW CONSTRUED.  *Only embrace property enumerated.*
   Only those things are exempt which the statutes declare to be, and all property of a debtor not excepted by the statutes is liable to creditors.

2. EXEMPT PROPERTY.  *Proceeds of insurance policy thereon, not exempt.*
   Therefore money due by an insurance company for loss of a house, which is part of the homestead of the insured, is not exempt.

FROM the circuit court of Lincoln county.

HON. J. B. CHRISMAN, Judge.

The appellant is a judgment creditor of the defendant, Ratcliff, the judgment being rendered in 1885 for a principal sum of two hundred and sixty-eight dollars.  In December, 1888, appellant caused the Equitable Insurance Company to be garnished and the company, by agreement of the parties, paid the money it owed Ratcliff, more than appellant's judgment, to appellee, Cassedy, who in accordance with the agreement answered as a garnishee instead of the insurance company.

The answer of Cassedy as garnishee admits the indebtedness, but claims the fund as exempt from garnishment, because it is the proceeds of a fire insurance policy on a house which was part of the homestead exemption of the debtor at the time it was burned.  The debtor also interposes a claim to the fund on the same ground.

This being the state of the record, the plaintiff moved for a judgment against the garnishee, Cassedy, which motion was denied and the garnishee discharged.  From the judgment discharging

the garnishee and taxing plaintiff with the costs, the latter appeals.

*R. H. Thompson*, for appellant.

That which is not exempt by the words of a statute cannot be made so by the courts. It could only be done upon the idea that some legislative policy is subserved; but this process of reasoning would exempt everything owned by a debtor. If something in addition to the things enumerated is to be exempted, who can say what is liable? Supposed hardships are not to be relieved against, for there are nine-tenths of the people of the state who, if deprived of three hundred dollars, would suffer inconvenience. We cannot add ten acres to the eighty acres exempted, nor ten dollars to the one hundred dollars exempt to the laborer as wages. How, then, can we exempt money that is not due for wages at all, and that, too, when the debtor has already received from the insurance company more than six hundred dollars, the garnishment having intercepted less than half of the amount due on the policy?

The idea that this money is by transmutation the identical dwelling-house that was lost is a pure *fiction*. If "fictions" and "transmutations" are to be carried into jurisprudence, no execution need ever be levied, for ingenious debtors can always be relied on to furnish the fiction and transmutation.

The correct view is announced in *Adams* v. *Dees*, 62 Miss. 354.

In some of the states, as Arkansas and Pennsylvania, the statutes authorize the debtor to select such personal property of a given value as he desires to hold, and those courts decide that money may be claimed, and hence the avails of an insurance policy. This is because it is within the terms of the statute.

It is true that Thompson on Homesteads and Exemptions, § 750, declares that money due on a policy for loss of exempt property is exempt. He follows a California case, and neither the text-book nor the cases cited give any reasons. The best reasoned decision is found in *Wooster* v. *Page*, 54 N. H. 125, which denies such exemption and says: "it is the furniture and not the avails of it that is exempted; when the property is consumed it is no longer household furniture in possession of the debtor, nor did it

become household furniture in the hands of the insurance company." The trouble with the California case and that of the inferior court of New York, cited by Thompson in the text-book, is that they carry the rule which distinguishes between voluntary and involuntary exchanges of exempt property too far. The exemption is always lost if the debtor voluntary exchanges exempt property for property not enumerated in the statute.

If appellant's view is correct, the facts all being before the court, this court should reverse and enter judgment here for appellant.

*H. Cassedy,* for appellees.

It is the settled policy of this state, as indicated by legislation and the courts, to secure to every head of a family a home, that he may not be made a pauper either by the greed of rapacious creditors or his own improvidence. This precise question, however, has never been presented here.

While the voluntary disposition of the homestead is recognized, the involuntary disposition of it is scrupulously guarded and the rights of the owner and his family are jealously protected. In many states the courts do not hesitate to depart from the letter of the statute and embrace its spirit and equity, and hence hold the proceeds of insurance of exempt property to be also exempt.

Such is specially held in *Houghton* v. *Lee,* 50 Cal. 101, and in *Cooney* v. *Cooney,* 65 Barb. 524. See also *Probst* v. *Scott,* 31 Ark. 652 ; *Strause Ex'r* v. *Becker,* 44 Pa. St. 206 ; Thompson, Hom. and Exemp., §§ 748, 749, 750, 783, and 784 ; Smyth, Hom. and Exemp., § 102.

Every state where the question has been presented holds such proceeds exempt except New Hampshire. *Wooster* v. *Page,* 54 N. H. 125. Mr. Thompson in his text-book says, " the rule is founded in reason too cogent to be shaken by the dissent even of that able court."

The case of *Adams* v. *Dees,* 62 Miss. 354, is not applicable. In that case there was a voluntary disposition by the debtor of his homestead, amounting to an abandonment.

The true policy of the state in reference to exemptions is laid down in *Moseley* v. *Anderson,* 40 Miss. 54. To hold that this money was not exempt would be violative of such declared policy.

CAMPBELL, J., delivered the opinion of the court.

The single question presented by this record is this : Is the money due from an insurance company on the loss of the house, which was a part of the homestead of the insured, exempt from liability to legal process against the homestead exemptionist?

If called on to declare what should be the law, our answer would be that inasmuch as the house was exempt, the money due because of its destruction should be, to enable the owner to rebuild. This would accord with the policy which secures the homestead against the demands of creditors, for it is undoubtedly true that a contract made to secure its owner against the consequences of loss from the destruction of what the law has endeavored to secure to him, by denying to his creditors the right to take it for debts, ought to secure its avails to the exemptionist, for the purpose of replacing his loss ; and thus he would be encouraged to secure indemnity for such a loss by effecting insurance. We perceive how completely it is in the power of the insured to defeat the pursuit of creditors, by inducing the insurer to rebuild where the contract provides for this ; and therefore of how little value an announcement of the liability to his creditors of money due for such a loss as we have supposed, to an exemptionist, will ordinarily be. But, regarding it as our duty to declare the law, as we understand it to be, and not to make it (when we find it already made) we are constrained to announce that the question stated in the beginning of this opinion must be answered in the negative.

This results, necessarily, from the established doctrine, which is that only those things are exempt which the statutes declare to be, and everything not embraced is liable to creditors.

A homestead is exempt, and the house is part of it, but the money due on a policy of insurance on the house is neither the house nor the representative of it. It is the result of a personal contract of indemnity against the loss of the house, which contract was founded on an independent consideration, in the premium paid by the insured. The house was the subject of the contract, it is true, but the indemnity was purchased by its price, the premium paid. What the law exempts is the homestead, and not what may

grow out of it or arise from it as the result of some contract made by the exemptionist—the homestead, and not the proceeds of it in another form which is not exempt.   If the exemptionist had sold his house, the debt due for it would not be exempt, because the statute does not declare that money shall be exempt which arises by contract from what is exempt.

. The money made by the use of the homestead is not exempt, and when exempt property is by act of the exemptionist converted into what is not exempt, the protection of the exemption laws cannot be claimed.   But even if the proceeds of the homestead were exempt, the money due by the policy of insurance would not be, for it is not the proceeds of the house, but of the policy—an independent personal contract.   *The house was not insured.   The owner was insured* by the contract to pay him a sum of money as indemnity against loss.

These principles are universally recognized, so as to deny to a mortgagee, who has no special contract right as to insurance, the right to claim the proceeds of a policy of insurance as appropriable to his mortgage on the insured property ; and we have held that a fraudulent grantee of land may hold the money due by a policy of insurance on a building on it against the claim of creditors entitled to subject the land and buildings to follow the insurance money.   *Bernheim* v. *Beer*, 56 Miss. 149.

It follows logically, from these settled principles, that the insurance money does not occupy the place of the destroyed building, and, if not, there is no legal ground on which to affirm that it is exempt because the building was.

This view is fully sustained by the supreme court of New Hampshire, *Wooster* v. *Page*, 54 New Hamp. 125.   Thompson on Homesteads and Exemptions § 750, says, " *the insurance money is not liable to garnishment,*" and cites *Houghton* v. *Lee,* 50 Cal. 101, and *Cooney* v. *Cooney,* 65 Barb. 524, to support this view, and after stating the denial of this rule by the supreme court of New Hampshire, adds, " but the rule is founded on reasons too cogent to be shaken by the dissent even of that able court."

What are the reasons ?   They are not given by Thompson, and

the California court in the case cited did not state any reason, but simply affirmed the judgment of the lower court. The New York case is the decision of an inferior court, and, while the opinion in the case is longer than in the California case, it is as destitute of any satisfactory reason to sustain its conclusion as is the other which does not attempt to furnish any.

Smyth on Homestead, § 102, follows Thompson citing the California case, above.

The question was before the supreme court of Texas in *Cameron* v. *Fay*, 55 Texas 58, and it was held that the insurance money was not liable, citing *Houghton* v. *Lee*, 50 Cal. 101 ; Thompson on Homesteads 750 ; citing also *Cooney* v. *Cooney*, 55 Barb. 524.

The Texas case so strikingly illustrates the illogical conclusion of the court, in deciding it, as to forbid our adoption of it as a precedent. In that case the mechanics, who erected the building insured, and had a lien on it, were denied the right to follow through the ashes the money arising from the insurance, on the universally accepted doctrine that this money resulted not from the building but from a personal contract of indemnity founded on an independent consideration, but when the mechanics sought to apply the money to their judgment as lien creditors, the court, which had said that the money did not represent the house but was the avails of contract, on this contention, held, that the money did occupy the place of the house! thus presenting a conspicuous example of reasoning to a just result on one question in the case, and *leaping* to a desired conclusion on another question in the same case, an example we shrink from imitating. In that case the court says : " We are of opinion that the proceeds of the policy of insurance upon the homestead, effected for its protection and preservation as such, should for a reasonable time at least, be exempt, etc." What is a reasonable time, and how is this to be determined ? That view is not only unsupported by principle, but is full of practical difficulty.

We too think, with the Texas court, that the proceeds of the policy should be exempt as the house was, but the statute has not made it so, and it is impossible to reason correctly from established

rules to the conclusion in favor of exemption, and we do not think it allowable to jump to a desired result.    We might have done so, and cited Thompson and Smyth as authority for the announcement, but it is not always safe to accept without question what is laid down in text-books or the opinions of the courts.

*Judgment reversed and the money directed to be applied to the judgment.*