TRENHOLM v. KLINKER ET AL.

[66 South. 738.]

BANKRUPTCY. *Title of trustee. Insurance on property conveyed in fraud of creditors.*

Money due on a policy of insurance procured by the grantee, on buildings situated on property, the title to which has been conveyed to her in fraud of her grantor creditors, is not the proceeds of the property and the trustee in bankruptcy of the grantor cannot subject it to the payment of the grantor's debts.

APPEAL from the chancery court of Hinds county.
HON. P. Z. JONES, Chancellor.

Suit by E. L. Trenholm, trustee in bankruptcy of C. E. Klinker and others. From a decree sustaining a demurrer to the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*Wells & Wells,* for appellant.

Our contention that Mrs. Mary Tanner holds the property in trust for the creditors of' Klinker, and to allow her to collect and hold this money is to allow her, as trustee, to receive and use for her own benefit this part of the trust property which accrues to her from the *corpus* of the property, and we contend that to allow the trustee to hold and own the profits of the trust property is a violation of the settled law in this country. That all of the profits of trust property accrue to and become a part of the trust estate is a proposition of law which we think cannot be denied. We do not contend that these insurance policies are to be treated as ''being a part and parcel of the real estate.'' What we contend for is, that these insurance policies are profits arising from the trustee's dealing with the trust estate and therefore, it becomes a part of the estate and should be dealt with as such.

The case of *Smith v. Ratliff,* 66 Miss. 686, relied on by appellees, does not raise or consider the question involved in this case. The sole question decided therein is this: ''Is the money due from an insurance company on the house which was a part of the homestead of the insured, exempt from liability to legal process against the homestead exemptionist?'' And so the case of *Bernheim v. Beer,* 56 Miss. 149, does not raise or consider the question we raise in the case at bar. We have shown in our original brief that this case of *Bernheim* v. *Beer* has been overruled, virtually, by *Simmons* v. *Ingram,* 60 Miss. 886. At any rate, if this court takes the view given by appellee's counsel, it virtually overruled the long lines of cases which hold that a trustee cannot make a profit

out of a trust estate, and allow Mrs. Tanner to receive the benefits of these insurance policies which come to her as a profit by means of her fraudulent conduct in connection with her brother and her co-defendant, McLaurin.

The case of *Kuhn Bros.* v. *Warren County,* 98 Miss. 879, holds that insurance money does take the place of the property itself, and our common sense, in the absence of any decision, teaches us that practically, it does take the place of the property destroyed, in a financial sense. We again refer the court to Pomeroy's Equity Jurisprudence, sections 1044, 1045, 1053, 1057, and 963, all of which sustain our contention. We think the case should be reversed and the demurrer overruled.

*R. H. & J. H. Thompson,* for the appellees.

The bill is necessarily one based upon the idea that where property is insured and is destroyed by fire, by some sort of transaction, the money due on the insurance policies stand in the place of the destroyed property, subject to all the rights which any person may have had against the destroyed property before it was consumed. On this subject CAMPBELL, J., speaking for this court in the case of *Smith* v. *Ratliff,* 66 Miss. 683, said: "A homestead is exempt, and the house is a part of it, 'but the money due on a policy of insurance on the house is' neither the house nor the representative of it. It is the 'result of a personal contract of indemnity against the loss of the house, which contract was founded on an independent' consideration, in the premiums paid by the insured. The house 'was the subject of the contract, it is true, but the indemnity was purchased by its price, the premium paid.' What the 'law exempts is the homestead, and not what may grow out of it' or arise from it as the result of some contract made by the 'exemptionist the homestead, and not the proceeds of it in another form which is not exempt.' The house was not insured. The owner was insured by the contract to pay him 'a sum of money as indemnity against loss.' "

"These principles are universally recognized, so as to 'deny to a mortgagee, who has no special contract right as to insurance, the right to claim the proceeds of a policy of insurance as appropriable to his mortgage on the insured property;' and we have held that a fraudulent grantee of land may hold the 'money due by a policy of insurance on a building on it against the claim of creditors, entitled to subject the land and buildings to follow the insurance money.'" Citing *Bernheim* v. *Beer*, 56 Miss. 149.

Turning to the case of *Bernheim* v. *Beer*, cited by CAMPBELL, J., we see that the very case now before the court was to all intents and purposes decided in that case. It is true *Bernheim* v. *Beer* has been criticised by this court in a subsequent case, *Hester* v. *Thomson*, 58 Miss. 108, but the criticism had no relation to the point there decided, now before this court. SIMRALL, Chief Justice, in the opinion of this court in *Bernheim* v. *Beer*, said: "We are of opinion that the insurance money owing to Mrs. Beer is not the proceeds of the property and that it cannot be taken from her by the creditors of her husband." As said in *Lerow* v. *Wilmarth, Trustee*, 9 Allen, 385: "The contract (of insurance) was valid, which she had a right to make and cannot be defeated by a third person who claimed that it was defeasible if creditors assail it."

"In their very nature policies of insurance are not incidents of the property. They are contracts between insurers and assured for indemnity of the assured, and not for loss or damages which another person may have sustained because of the destruction of the property, no matter what the interest of that person may be, as mortagee, creditor or otherwise."

"If anothr person has any interest in the property, he may insure for himself; nor can he set up a claim to money which has become due to another, unless that other be his debtor, and the money is garnished or attached."

Citing *Carpenter* v. *Providence Washington Insurance Co.*, 16 Pet. 495; *Nippe's Appeal*, 75 Pa. St. 478, 479.

We cannot see how any court was ever so illogical as to render such decisions as those criticised by Judge CAMPBELL in *Smith* v. *Ratliff*, 66 Miss. 683. Surely, the judges who made such a decision and the text-writers who followed them approvingly must have "eaten of the insane root that takes the reason prisoner."

We are quite sure that the complainant, Trenholm, and his distinguished counsel in this case cannot seriously think that the destroyed houses are still in existence and are the same thing as a debt due from the insurance companies to either Mrs. Tanner, McLaurin or Klinker. They would not have been induced to have propounded the amended bill in all probability but for an expression in the opinion of this court in the case of *Kuhn Bros.* v. *Warren County*, 98 Miss. 879, construing Code 1906, section 4312, providing for the change of assessments in certain cases. That case was correctly decided because Kuhn Brothers lost nothing by the fire, and the opinion of this court, written by Judge MAYES, is authority for nothing in the world except the proposition that a taxpayer is not entitled to a reduction of assessment unless he has suffered loss by the destruction of his property. We quote from the opinion: "If the goods were fully covered by insurance the appellant lost nothing as far as the assessment is concerned by reason of the fire." This was a true statement and is the basis of the opinion. The judge, however, used this expression: "The fire merely changed the form of value from goods to money."

The expression is a misleading one. Even if it be correct in its application to the case then before the court, it is not authority for the proposition that a destroyed house and money due on a policy of insurance because of its destruction, are one and the same thing. The court goes on in the same opinion to say: "Section 4312 applies only in a case where the destruction of the prop-

erty is followed by actual loss, but not a case where there has been merely change in the form of the value."

"This shows the rock bottom, on which the opinion rests, is the idea that the owner must suffer a loss in order to have his assessment diminished under the statute. The case of *Kuhn Bros.* v. *Warren County* can have no just or proper application to the question now before this court, while the case we have cited, *Bernheim* v. *Beer,* 56 Miss. 149, and *Smith* v. *Ratliff,* 66 Miss. 683, are controlling. And, besides, the case of *Marks* v. *Bradley,* 69 Miss. ——, is decidedly in appellee's favor. There, a partner was the sole owner of a building; it was insured by a co-partnership of which he was a member, the policy being payable to the co-partnership, the premiums were paid by the co-partnership; and the house was entitled to the proceeds of the policy, and the money collected on the policy belonged to the firm and not to the individual partner. In other words, fire insurance money results from the contract of insurance; the insured is entitled to collect it; he alone was insured, the house was not insured. The proceeds of a contract can by no sort of mental conception be made the same thing as a burned up and destroyed house.

Opposing counsel cite Perry on Trust and Trustees, section 478, and *Lerow* v. *Wilmarth,* 9 Allen 362, cited by Perry, but these authorities and all the others which even seemingly are adverse to our contention cited by appellants' counsel refer to trustees under legal duty to account to the beneficiaries of the trust. Trenholm, the Trustee in this case could have insured the property belonging to the estate of the bankrupt; could have insured it in his own name and as such trustee could have insured the interest of the beneficiaries. That, however, is not a case like this. Had Trenholm, trustee, so insured, of course, the proceeds of the insurance contract would have belonged to the beneficiaries. In this case, however, the insurance was only of the interest of the insured and

if every charge made in the bill be taken as true, Mrs. Tanner could not have compelled Klinker to account. The authorities cited by opposing counsel are not applicable to this case.

Cook, J., delivered the opinion of the court.

The original bill in this case was filed by E. L. Trenholm, trustee in bankruptcy, for the purpose of having the court set aside certain conveyances of real estate made by the bankrupt, C. E. Klinker, to his sister, Mrs. Tanner, and to L. M. McLaurin. It is alleged that Klinker, before he was adjudicated a bankrupt, conveyed this property to the parties named, ''without consideration, and for the purpose of defrauding his creditors.'' The defendants answered this bill with a general denial. The original bill was filed October 29, 1912, and the answers thereto were filed December 5, 1912. The trustee in bankruptcy filed an amended bill of complaint May 9, 1913. In this amended bill the original bill was adopted in this allegation:

''That he (complainant) here and now reiterates all that is in said original bill of complaint as it is therein stated.''

Then follows the allegations, viz.:

''That he is informed and believes that C. E. Klinker, acting for himself or for his sister, Mrs. May Tanner, or L. M. McLaurin, defendants in this case, obtained fire insurance policies on the houses which were situated on lots 6, 7, 8, 9, and 14, of block A, of Roache's Survey, an addition to the city of Jackson, which lots are described in the original bill in this case, and are in controversy as to the ownership thereof in this suit.

''That he does not know the date of said fire insurance policies, but he is informed and beleives that they aggregate the amount of nine thousand dollars, of which sum forty-five hundred dollars is in the American Fire Insurance Company of Newark, New Jersey, and forty-five

hundred dollars in either the Atlas Fire Insurance Company of New York City, or the German Fire Insurance Company of Peoria, Illinois, or both.

"Complainant further states that on or about the 1st day of May, 1913, the said houses so insured on said lots were destroyed by fire, by reason of which the money on said policies became due and payable; that said houses were totally destroyed by fire.

"Complainant further states to the court that he is informed and believes that he is entitled as such trustee in bankruptcy to receive as a part of the assets of said bankrupt estate the said insurance money, whatever amount that may be; that said May Tanner holds said property in trust for the said C. E. Klinker, and the same was his property at the time he was adjudicated a bankrupt, so that complainant says that said money ought to be paid to him as such trustee."

To this amended bill defendants interposed a demurrer, assigning the following grounds:

"(1)   There is no equity on the face of said amended bill, nor does it charge facts necessary to be answered.

"(2)   It is not shown that the pretended insurance was taken out or effected before the institution of the alleged bankruptcy proceeding, or that the creditors of the bankrupt have or can have any interest therein; and it is shown that the buildings were burned after the beginning of the suit.

"(3)   It is not shown that defendant May Tanner has any interest in the insurance.

"(4).   It is not shown that defendant McLaurin has any interest in the insurance.

"(5)   The proceeds of a fire insurance policy are not the property alleged to have been destroyed by fire, nor are the creditors of the alleged bankrupt interested therein.

"(6)   The defendant C. E. Klinker, the alleged bankrupt and debtor, is shown by the amended bill and the

pleadings to be a citizen and resident of this state, and it is not charged that he is absent from the state, or that he absconds, and no predicate is laid as a basis for an attachment in chancery.

"(7)    There is no pretense that there has been a fraudulent conveyance of the insurance policies, or the debts due on them by the insurance company.

"(8)    The policies of insurance mentioned in the amended bill necessarily insured only the interest of the beneficiary in the policies; it is not shown who is the beneficiary, and if he had no interest, as the amended bill seems to show, there is no insurance.

"(9)    That said amended bill is in divers other respects uncertain, imperfect, and insufficient."

The court sustained the demurrer, and complainant appeals.

We will notice only the fifth ground of demurrer, because it is determinative of this appeal. The insurance company and Mrs. Tanner are the only parties to this contract of insurance. Conceding that the conveyance of the land, upon which the buildings were located, was in fraud of the creditors of the bankrupt, it does not follow that the trustee is entitled to the proceeds of the insurance policy. The amended bill proceeds upon the theory that the insurance takes the place of the property insured after its destruction by fire. This point has been decided against appellant's contention in two cases, viz., *Smith* v. *Ratliff*, 66 Miss. 683, 6 So. 460, 14 Am. St. Rep. 606, and *Bernheim* v. *Beer*, 56 Miss. 149.

It is claimed that these cases were practically overruled by this court in *Simmons* v. *Ingram*, 60 Miss. 886. This case, in our opinion, does not overrule or weaken *Bernheim* v. *Beer*, in so far as the question here is involved. That part of the opinion in *Bernheim* v. *Beer* which announces the law applicable to this case was not questioned by the court in *Simons* v. *Ingram*. The court decided in *Bernheim* v. *Beer* that:

"Money due on a policy of insurance procured by a married woman on buildings situated on property the title to which has been conveyed to her in fraud of her husband's creditors is not the proceeds of the property, and cannot be subjected by the husband's creditors to the payment of his debts. She can, in such circumstances, make a valid contract of insurance, which, being between the insurer and the insured, exclusively for the indemnity of the latter, cannot be defeated by third persons."

And this was the only question before the court. The judge rendering the opinion of the court went further, and used this language:

"The extent of the complainants' rights is to reach the money of the debtor invested in the lot and the improvements, and to pursue it beyond that into any proceeds or other property in which Mrs. Beer has put it."

Referring to the language just quoted, the court, in *Simmons* v. *Ingram*, 60 Miss. 899, said:

"In *Carlisle* v. *Tindall*, 49 Miss. 229, and *Bernheim* v. *Beer,* 56 Miss. 149, it was said that where a debtor purchased property, the title of which he caused to be invested in another for the purpose of defrauding his creditors, the creditor could proceed to subject it to the payment of his demand to the extent only of the funds of the debtor which had been invested in it. In neither of these cases was the point presented for adjudication, and we do not concur in the views indicated in the opinion of the judge who delivered the opinions."

It will be observed that in *Carlisle* v. *Tindall* no criticism is made of the real point decided in *Bernheim* v. *Beer,* but the court does repudiate that part of the opinion which undertook to decide a question not presented by the record.

*Affirmed.*