## John S. Bay *et al.*

### *v.*

## Isaac Cook.

1. ˮ ADVANCEMENT, *by parent to child — its characteristics — when sustainable as regards creditors, prior and subsequent, etc.* When a parent purchases land with his own means, in the name of his infant child, it has generally been considered an advancement.

2. But it is a question of intention, each case to be determined by the reasonable presumption arising from all the facts and circumstances connected with it. It is always competent to meet and repel the presumption, by proof of circumstances showing it was not intended as an advancement.

3. When fraud is established, that presumption is effectually repelled.

4. A parent may give to his child, so much of his estate as he pleases, provided he retains enough to answer all subsisting demands against himself.

5. Whether such gifts are valid or not, and made without the intention to injure creditors, is wholly a matter of inference from the facts.

6. An advancement to a child, may be regarded in the same light as a voluntary settlement of property upon him by the father. The difference is only in the form.

Bay et al. *v.* Cook.

7. In such case, it is not necessary the father, making the settlement, should be actually indebted at the time he makes it, to render it fraudulent; if he does it with a view to his being indebted at a future time, it is equally fraudulent, and will be set aside.

8. A deed executed by a third person to the child, by the procurement of the parent, is, to all intents and purposes, a deed from the parent to him.

9. It is contrary to public policy to allow a security upon the official bond of a deputy sheriff, so to advance a son, or make a voluntary settlement upon him of all his estate, as to defeat the bond.

10. It would be but right that courts should hold such contingent liabilities as equivalent to an actual judgment.

11. So, where a party who was security upon the official bond of a deputy sheriff, the condition of which was broken, used the greater portion of his means in purchasing land in the name of his infant child, the residue of his property being insufficient to pay his obligation under the bond, it was *held*, the gift was fraudulent as to the creditor, and the child held the land in trust for his benefit.

12. SALES OF PERSONALTY—*non-delivery*—*fraud.* If a person sells personal property and does not deliver it to the vendee, there being no agreement in the bill of sale that the possession should remain with the vendor, the sale will be deemed fraudulent as to creditors of the vendor.

13. FRAUD—*inadequacy of price.* And where a party who was heavily in debt sold personal property of the value of $500, for $50, the gross inadequacy of the price for which the property was sold, was deemed evidence of fraud as to creditors of the vendor.

14. CREDITORS' BILLS—*execution must be returned nulla bona.* Ordinarily an execution must issue on a judgment, and be returned unsatisfied, before a resort to a court of equity to reach real estate in which the judgment debtor has not such an interest as might be sold on execution.

15. SAME—*the rule is otherwise in proceedings against intestate estates.* Yet in proceedings against intestate estates, which are insolvent, a resort to equity may be had without this preliminary, as our statute does not permit an execution to be issued upon a judgment against an administrator.

16. PLEADING IN CHANCERY—*averment of insolvency of an estate.* Where it is alleged in a bill in chancery that the complainant's claim against an estate is allowed to the amount of $6,000, and over, and that the executor claims to have filed a full and perfect inventory, which amounts to only $115, that is a sufficient averment of the insolvency of the estate.

17. JUDGMENT *cannot be impeached in chancery for error.* If a judgment at law is in full force, and rendered by a court of competent jurisdiction, and no fraud in obtaining it is alleged, its validity cannot be inquired into in a court of chancery. However erroneous it may be, it must have full force, until it is reversed.

WRIT OF ERROR to the Superior Court of Chicago.

The facts of this case are sufficiently set forth in the opinion of the court.

Mr. E. A. STORRS, for the plaintiffs in error.

There are no equities in the bill; and herein

1. It affirmatively appears from the bill, that the conveyance sought to be avoided was made by Joseph Smith to Edgar T. Bay, the son of Henry B. Bay, and that the consideration was paid by the latter. The presumption therefore is, that it was an advancement. *Vanzant* v. *Davies,* 6 Ohio State, 54; *Creed* v. *The Lancaster Bank,* 1 Ohio State; Story's Eq. Jurisp., sec. 1202.

2. There is, therefore, in such a case, no presumption of a resulting trust in favor of the donor, but, on the contrary, that it was induced by natural love and affection, as such, founded upon a good consideration. And a creditor of the donor, in order to impeach the validity of the conveyance, must show some circumstances of fraud. *Doyle* v. *Sleeper,* 1 Dana, 531; *Baker* v. *Dobyns,* 4 Dana, 220; *Guthrie* v. *Gardner,* 19 Wend. 414.

3. A conveyance of this character is not *per se* fraudulent and void as to existing creditors. It does not come within the statute, unless made by one in embarrassed or insolvent circumstances. *Cadargan* v. *Kennett,* Cowp. 432; *Law* v. *Smith,* 4 Ind. 61; *Clayton* v. *Brown,* 17 Georgia, 220; *Walker* v. *Burrows,* 1 Atk. 93; *Lush* v. *Wilkinson,* 5 Vesey, 384; *Smith* v. *Reaves,* 7 Ired. (Law) 343; *Smith* v. *Tell,* 3 Eng. 474; *Wilson* v. *Howser,* 12 Penn. State, 116; *Mateer* v. *Hissim,* 2 Penn. 160; *Thompson* v. *Dougherty,* 12 S. & R. 448; *Verplanck* v. *Story,* 12 Johns. 536.

4. By the third section of our statute of frauds and perjuries, all sales and conveyances made upon a good consideration, and *bona fide,* are excepted from the operation of the statute. Natural love and affection is a *good* consideration, and will support the deed unless it be shown to have been

made in bad faith, and in which the vendee must be shown to have participated. *Ewing* v. *Gray*, 12 Ind. 64.

5. A general allegation of fraud in a bill is not sufficient. Facts must be stated, which will justify such a conclusion. *Blondheim* v. *Moore*, 11 Met. 383; *Bodine* v. *Edwards*, 10 Paige, 504; *Small* v. *Boudinot*, 1 Stockt. Ch. 391; *Kinder* v. *Macy*, 7 Cal. 207; *Moore* v. *Green*, 19 How. 72; *Cockrell* v. *Gurley*, 26 Ala. 405; *Bryan* v. *Spruill*, 4 Jones' Eq. 27.

6. It does not appear that the complainant has exhausted his legal remedies.

It is alleged that the execution was issued March 12, 1857, returned November 21, 1857, by order of the court, and that Henry B. Bay died in September, 1860. It is not alleged that any levy was ever made, nor that the execution was returned unsatisfied. *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *Moran* v. *Dawes*, 1 Hopk. Ch. 365; *Brinkerhoff* v. *Brown*, 1 Johns. Ch. 670; *Beck* v. *Burdett*, 1 Paige, 305; *McDermott* v. *Strong*, 4 Johns. Ch. 689; *Stone* v. *Manning*, 2 Scam. 534.

7. The rule is now well established, that a voluntary settlement in favor of a wife or children, is not to be impeached by subsequent creditors on the ground of its being voluntary, but fraud in fact must, in such cases, be affirmatively shown. *Sexton* v. *Wheaton*, 8 Wheaton, 229; *Salmon* v. *Bennett*, 1 Conn. 525; *Ward* v. *Hollins*, 14 Met. 158; *Bank* v. *Ballard*, 12 Rich Law (S. C.) 259; *Bullitt* v. *Taylor*, 34 Miss. 708; *Hone* v. *Volcano, etc.*, 13 Cal. 62; *Nicholas* v. *Ward*, 1 Head, 323; *Enders* v. *Williams*, 1 Met. 346; *Todd* v. *Hartley*, 2 Met. 206; *Watson* v. *Wilson*, 1 Grant's Cases, 74; *Cole* v. *Varner*, 31 Ala. 244; *Williams* v. *Banks*, 11 Met. 198; *Ingrew* v. *Phillips*, 3 Strobh. 565; *Swayze* v. *Doe*, 13 S. & M. 317; *Martin* v. *Oliver*, 9 Humph. 561; *Pepper* v. *Carter*, 11 Miss. 540; *Starr* v. *Strong*, 2 Sand. Ch. 139; *Hanson* v. *Buckner*, 4 Dana, 251; *Bennett* v. *Bedford Bank*, 11 Mass. 421; 1 *Am. Lead. Cases*, 67 *et seq.*, and cases cited.

8. At the time the conveyance was made to Edgar T. Bay, the defendant in error was not a creditor of Henry B. Bay. There had then been no breach of the condition of the bond executed to the plaintiff in error. *McLaughlin* v. *Bank of Potomac*, 7 How. 229; *King* v. *Thompson*, 9 Pet. 220; *Heighe* v.

*Farmers' Bank,* 5 Har. & Johns. 68; *Seward* v. *Jackson,* 8 Cowen, 436; *Hancock* v. *Entwistle,* 3 Durn. & E. 435; 1 Johns. Cases, 73; *Lansing* v. *Prendergrast,* 9 Johns. R. 127; *Van Wyck* v. *Seward,* 6 Paige, 66; S. C. affirmed, 18 Wend. 375.

Mr. W. T. Burgess, for the defendant in error.

The first question presented is, was Isaac Cook a creditor of Henry. B. Bay at the date of the conveyance of the land to his infant son?

In *Chouteau* v. *Jones et al.,* 11 Ill. 318, this court said, "The relation of debtor and creditor between principal and surety, so as to entitle the latter to avoid a voluntary conveyance, made by the former, commences at the date of the obligation by which the surety becomes bound, and not from the time he makes payment." *Howe* v. *Ward,* 4 Greenlf. 195; *Thompson* v. *Thompson,* 19 Me. 244; *Carlisle* v. *Rich,* 8 N. H. 44.

The case of *Howe* v. *Ward,* is a parallel case to the present one. See also 5 Cow. 67, 18 Wend. 383, and 8 Cow. 429.

Then was such conveyance fraudulent as to Cook?

The rule as laid down in *Read* v. *Livingstone,* 3 J. Ch. R. 481, is the true rule. See in this connection, 18 W. 399.

*Hutchinson* v. *Kelly et al.,* 1 Robinson (Va.) R. 135, is a strong and strictly parallel case.

In the case of *Sexton* v. *Wheaton,* 8 Wheat. 243, C. J. Marshall says: "In construing this statute, the courts have considered every conveyance not made on consideration deemed *valuable* in law, as void against previous creditors."

The next question is, was the aid of a court of equity to set aside this conveyance properly invoked?

In *McDowell* v. *Cochrane,* 11 Ill. 31, it is held that, ordinarily, a creditor must exhaust his legal remedies before calling to his aid the powers of a court of chancery. But insolvent estates are an exception, as execution cannot issue against an administrator.

The same rule is adopted in *Chouteau* v. *Jones,* 11 Ill. 319.

In this case we took out execution in June, 1857. That execution was stayed by the Circuit Court, and the judgment

set aside. The case then came to this court, and the order setting aside the judgment was reversed in April, 1859. The opinion was not promulgated till April, 1860, after the death of Bay, so that we had no opportunity to take out another execution against him, and could only do as was done in *Chouteau* v. *Jones*, get judgment 'as the administrator, and then file our bill.

The counsel has entirely mistaken the nature of this bill. There was a resulting trust in favor of H. B. Bay, upon which the judgment of May, 1857, was'a lien, or the deed was fraudulent as to Cook. Either way Cook had a right to have this land applied in payment of his debt. in judgment. The case of *Wightman* v. *Hatch*, 17 Ill. 286, is in point, referring to the case of *Miller* v. *Davidson*, 3 Gilm. 518.

Mr. Storrs, in reply: The case of *McDowell* v. *Cochrane*, 11 Ill. 30, cited by the defendants in error, is not in point, because there is no sufficient allegation of the insolvency of Bay's estate. The allegation in the bill of complaint, that John S. Bay, as executor, "*pretends and claims* that he has filed a full and perfect inventory of the estate, both real and personal, of Henry B. Bay, but has omitted therefrom said real estate; *and if said inventory is correct, there is not sufficient to pay said complainant's claim*," is not a sufficient allegation of the insolvency of the estate, nor of the fact that there is not sufficient real and personal property to pay the judgment. *State Bank* v. *Ellis*, 30 Ala. 479; *Quarles* v. *Girgsby*, 31 Ala. 172; *Pharis* v. *McLeachman*, 20 Ala. 662; *McGuire* v. *Shelby*, 20 Ala. 456.

The case of *Chouteau* v. *Jones*, 11 Ill. 300, referred to by defendants, is not applicable to this case. The question there arose between the *surety and the principal*, and the court say, "The relation of debtor and creditor *between principal and surety*, so as to entitle the latter to avoid a voluntary conveyance made by the former, commences at the date of the obligation by which the surety becomes bound, and not from the time he makes payment." That this is a mere equitable rule, founded upon the peculiar relations which subsist be-

tween principal and surety, and which do not, as between the obligee in the bond, and the surety, is evident from the fact that, at law, the surety is not treated as the creditor of the principal, even after condition broken, but only upon actual payment. The case does not declare that the surety is in fact, and to all intents and purposes, a creditor of the principal before condition broken, but that he shall simply be entitled to all the benefits of that position, in order to avoid a voluntary conveyance made by the latter.

Nor are the cases, *Howe* v. *Ward*, 4 Greenlf. 195, and *Carlisle* v. *Rich*, 8 New Hamp. 44, cited by the court in *Chouteau* v. *Jones*, applicable to this case. In *Howe* v. *Ward*, the question arose between *two sureties*, and the conveyance sought to be set aside was executed *after the death of the principal*. In *Carlisle* v. *Rich*, the principal in the bond had absconded before the alleged fraudulent conveyance was executed.

Mr. Justice Breese delivered the opinion of the Court.

This was a bill in chancery in the Superior Court of Chicago, by Isaac Cook, complainant, against the defendants, Edgar T. Bay and others, seeking to subject certain property of Bay, to the execution on a judgment obtained by Cook against Henry B. Bay on the 30th May, 1857, and the others named in the bill.

The facts of the case are briefly these. Cook was sheriff of Cook county in 1850, and appointed Daniel T. Wood, one of the plaintiffs in error, his deputy, who, on the twelfth of March, 1850, executed his bond in the penalty of ten thousand dollars with Henry B. Bay, and the others, his sureties, conditioned that Wood, as such deputy, should faithfully discharge all the duties required of him as deputy sheriff, and save Cook harmless on account of any and all acts of the deputy, or by color of his office.

An action was brought on that bond, in the Cook Circuit Court, in which the breach assigned was, that Wood, as deputy, had collected a large amount of State and county

taxes, for which he had failed to account and pay over. A judgment by default was entered against Wood and Bay and the other parties, for the debt, to be discharged by the payment of the damages, which were assessed at five thousand three hundred and eighty-two dollars and seventeen cents.

On the 12th of June, 1857, an execution was issued on this judgment, which came to the hands of the sheriff, July 23rd, and returned November 20th by order of the Circuit Court, which order was set aside by this court.

After making the bond, and before May 1, 1851, Henry B. Bay purchased from Joseph Smith, with his own money and means, certain lands in Cook county, described as the west half of lot 5, in block 81, in the School Section Addition to Chicago, and paid for the premises on that day, and was entitled to a deed therefor, but at his request, the conveyance was made by Smith, to his son, Edgar T. Bay, then an infant, in whom the title became vested.

Henry B. Bay entered into possession of the lot and erected two houses upon it, and before his death, made a will by which he devised the premises to this son Edgar, and appointed John S. Bay, his brother, his executor.

This executor proved the will and obtained letters testamentary, and filed an inventory in which he did not insert this lot and premises as a part of the estate.

Cook's claim was allowed by the court of probate, to $6,648.58, and placed in the fourth class, to be paid in due course of administration.

It appears also, that Henry B. Bay was the one-third owner of two steam dredging machines, which, shortly before his death, he conveyed, by bill of sale, to John S. Bay, for the sum of fifty dollars, and also all his interest, of every kind, in several firms of which he had been a partner. These dredging machines were not included in the inventory, the executor claiming them as his own.

The judgment against Henry B. Bay, as one of the sureties of Wood, was unsatisfied, and no execution had issued upon it, except the one mentioned.

This was the position of the matter, when the defendant in

error filed a bill in chancery against the defendants in the judgment, and against Edgar T. Bay and John S. Bay, the executors of Henry B. Bay, to subject this lot and premises, and the interest in the dredging machines, to the payment of the judgment.

The court decreed according to the prayer of the bill, from which decree the plaintiffs here sued out a writ of error, and have assigned for error, 1, that there was no breach of the bond nor liability thereon, by Henry B. Bay, at the time of the conveyance to Edgar T. Bay; 2, a court of equity had no jurisdiction of the case, no execution having been returned unsatisfied; 3, the decree is against law and evidence.

The first point made by the plaintiffs in error under this assignment of errors, is, that the judgment upon which the bill of complaint was filed, was not warranted by law, the breach assigned in the declaration being a failure to pay over taxes collected by Wood, and the bond being conditioned for the faithful performance of his duties as deputy sheriff.

We do not suppose, if a judgment is in full force and rendered by a court of competent jurisdiction, and no fraud in obtaining it is alleged, that its validity can be inquired into in a court of chancery. However erroneous it may be, it must have full force, until it is reversed. But this court has settled the character of the proceedings on the bond, and have decided, that the breach was well assigned, and that the sureties of the deputy sheriff must answer for his default in failing to pay over the taxes he had collected in virtue of his office.    *Wood et al.* v. *Cook, ante,* 271.

The second point made by the plaintiffs in error, is, that there are no equities in the bill, and this is discussed under fifteen subdivisions, and one of them, the tenth, is further subdivided into five different propositions. We shall not examine them all separately, nor follow the counsel on either side, into the wide field of argumentation they have so diligently explored, but content ourselves with the consideration of what we deem the important points of the controversy.

It is urged by the plaintiffs in error, that as it affirmatively appears from the bill, that the conveyance sought to be

avoided was made by Smith to the son of Henry B. Bay, and that the consideration was paid by the father, the presumption is, that it was by way of advancement to the son.

Admit the principle, it is but a presumption, subject to be rebutted by circumstances, or by evidence showing a different intention. This is the doctrine of the cases cited by counsel, and of all other cases which have come under our notice. It is a question of intention, each case to be determined by the reasonable presumption arising from all the facts and circumstances connected with it.

THOMPSON, C. J., in the case of *Jackson* v. *Matsdorf*, 11 Johns. 95, said the question had often been agitated in chancery, whether, when a parent purchased land in the name of his child, it should be deemed a trust for the father, or an advancement for the child. When the child is under age it has generally been considered an advancement.

It is always competent to meet and repel the presumption by proof of circumstances showing it was not an advancement intended. *Proseus* v. *McIntyre*, 5 Barb. 424. When fraud is established, that presumption is effectually repelled.

A gift of property, real or personal, made by a parent to a child, is a valid gift, where no creditors intervene, and who, by the gift, are subjected to no loss. But such a transaction, to be received favorably by the courts, must be clear of any imputation of fraud, and free from the suspicion of a design to injure creditors. A parent may give to his child so much of his estate as he pleases, provided he retains enough to answer all subsisting demands against himself. Whether such gifts are valid or not, and made without the intention to injure creditors, is wholly a matter of inference from the facts.

There is no suggestion in this case, that the infant son possessed any money or means which could be appropriated to the purchase and payment of this property, or that the money was derived from him, directly or indirectly. On the contrary, the proof is, that his father was, in August, 1850, a partner in a public house in Chicago, called the New York House, to the extent of one-half its stock, business and fixtures, which he exchanged with Smith for this lot, directing

22

Smith to make the deed to his son. Should this, on the facts proved, be deemed an advancement?

The deed bears date August 20, 1850. What the value of the interest in the New York House was, or what the lots were worth, is not shown; but it is shown, that the interest in this public house was all the available means Bay then possessed. The deficit of the deputy is shown to have consisted in omitting to settle up with the State for the taxes collected, which should have been settled for at the pending July term of that year. It is not an unreasonable or violent presumption, that Bay, being one of the sureties, had an eye to the manner in which the deputy was deporting himself, and was apprised of this defalcation; at any rate he knew he was on the bond, and knew there was a possibility he might some day be brought to judgment on it. Sureties on official bonds, as a general fact, do not regard the morality of an act with as much consideration as they would, perhaps, if they were principals, but rather believe they are justified in resorting to almost any device to escape responsibility. The most usual one is, by, in common parlance, "putting their property out of their hands," at least such portions of it as are liable to execution. Would it be uncharitable to believe that this idea of safety from the bond through Smith, flashed across the mind of Bay? He never had the legal title to the lot, and it could not be expected, therefore, that he owned it; if it was in his infant son, he might console himself with the prospect of a future home, unannoyed by creditors, and unterrified by events. In this confidence and hope, he erected houses on the lot, in one of which he dwelt, and dying, devised the whole property, being all he had, to this son, who it is claimed, owned it under the deed from Smith. Can any rational man believe, under the circumstances thus briefly stated, that Bay intended this property as an advancement to his son, when he gave all he had to buy it, that it was all he had when he died, and that he made a formal devise of it to the son? If Bay intended it as an advancement, why devise it, the title being in the son? Can it be doubted that the legal title was thus placed in the son for the purposes we have stated? Does a father give all his property to a son by way of advancement?

Again, dwelling-houses were erected on the lot by the father.  When they were erected is not in proof, nor their cost. If they were built after May 30, 1857, the expenditure of the money for them would be in fraud of the complainant, whose judgment was then in force.

But the question is, was not Bay insolvent, at the time of this conveyance? In other words, had he property in his possession of value sufficient to meet his obligations? This is not pretended; it is only claimed there were no judgment creditors against him, when he purchased the lot and paid for it. But here was a pecuniary obligation of ten thousand dollars against him, with a condition, it is true, and that condition broken at the time he purchased and paid for the lot. *In foro conscientiæ* he was the debtor of the defendant in error. It being a question of intention, we have no hesitation in affirming, from the facts and circumstances, that Bay did not strip himself of all his property to advance his infant son, but had the deed made to his son, that he, himself, in the character of natural guardian, might continue in the undisturbed enjoyment of the property, and thus protect himself against a recovery on the bond, the condition of which was then broken. The spectre of this bond had a controlling influence over him — the condition had been broken; and he did not know how soon all he possessed might be swept from him, as a consequence thereof. As a question of intention, therefore, we cannot doubt, from the facts and circumstances, that it was not as an advancement, the title to the lot was taken to his infant son, but to shield it from his own responsibilities, then existing.

An advancement to a child may, properly, be regarded in the same light as a voluntary settlement of property upon him by the father. The difference is only in the form; but for that, this transaction would be termed a voluntary settlement. In such case, it is not necessary the father, making the settlement, should be actually indebted at the time he makes it, to render it fraudulent; for if he does it with a view to his being indebted at a future time, it is equally fraudulent, and will be set aside. This principle is distinctly announced by

Lord Chancellor HARDWICKE, in *Stileman* v. *Ashdown*, 2 Atkyns, 480, in *Fitzer* v. *Fitzer et al.*, id. 512, and such is the reasoning, in the case of *Taylor* v. *Jones*, id. 600. The deed from Smith to the son, was, to all intents and purposes, a deed from the father to him. Now a serious question protrudes itself in this case. The bond executed by Henry B. Bay was for the faithful performance of the duties of a public office— it was an official bond for the security of the State in the due execution of official duties ; is it the policy of the law, that persons who shall voluntarily assume such obligations and whose solvency has passed the proper ordeal, that they shall be permitted, the next day, to divest themselves of all the property, which enabled them to pass the ordeal, by a voluntary settlement of it upon a favorite child, a wife, or other party, for the consideration alone, of love and affection? Where would be the security of the State, should such settlements be countenanced and encouraged? In such cases, it would seem right and just, that courts should hold such contingent liabilities as equivalent to an actual judgment. We think the facts show the inducement Bay had, to make this settlement upon his son, and it being voluntary and without a valuable consideration, must be regarded, under the circumstances, not as an advancement, but as in fraud of the bond he had executed.

As to the objection that the allegation of fraud is not sufficiently specific, that is answered by the facts of the case. They are few and simple, and are so clearly stated, as to enable the parties charged to understand the character of the acts in which the fraud is alleged to consist.

It is further objected that the bill contains no allegation that the execution which issued in June, 1857, was levied, nor that it was returned unsatisfied.

The case of *McDowell* v. *Cochrane*, 11 Ill. 30, disposes of this objection. There it was held, that though ordinarily an execution must issue on a judgment, and be returned unsatisfied before a resort to a court of equity, to reach real estate in which the judgment debtor has not such an interest as

Bay et al. *v.* Cook.

might be sold on execution, yet in proceedings against intestate estates which are insolvent, a resort to equity may be had, without this preliminary, as our statute does not permit an execution to be issued upon a judgment against an administrator. The fact of insolvency is sufficiently averred in the bill, by the reference to the inventory filed, which amounts to one hundred and fifteen dollars only.

Under all the circumstances, we are bound to consider and to hold, that of this real estate, the infant, Edgar T. Bay, held the title in trust for the benefit of the defendant in error, who was a subsisting creditor of Henry B. Bay, who purchased and paid for it, he holding Bay's conditional obligation for ten thousand dollars, a breach of which had occurred at the time of the purchase and payment; and also, upon the ground of public policy, that it cannot be permitted a surety in an official bond so to advance a son, or make a voluntary settlement upon him of all his estate, as to defeat the bond.

In regard to the interest of Henry B. Bay in the dredging machines, it appears he sold them in 1860, for the small sum of fifty dollars, a short time only before his death, to his brother, John S. Bay, whom he appointed his executor. The machines were never delivered to John S. Bay, nor was there any agreement in the bill of sale, that the possession should remain with the vendor. This rendered the sale void for fraud. But fraud is apparent in the price paid, under the circumstances of the vendor. He was heavily in debt; the machines were valued at three thousand dollars, and were in good working order when sold. The one-third interest was variously estimated. Fox, who worked them and knew all about them, says he would have paid five hundred dollars for one-third interest, even if the other two-thirds were incumbered to the amount of their value.

There is no satisfactory proof that Bay's third was incumbered in any way. No mortgage is shown, and no mechanics' liens proved. We are therefore to consider it as free from incumbrances, and worth, at the lowest calculation, five hundred dollars. A sale of it, under the circumstances shown,

and for the price given, and the possession of the property not passing to the vendee, constitutes, in both aspects, a fraud, and leaves the property subject to the claims of creditors.

We concur with the Superior Court in the decree, and affirm it in all its parts.

*Decree affirmed.*