Henry A. Treadwell

*v.*

John McEwen *et al.*

*Filed at Ottawa November 11, 1887.*

1. Fraudulent conveyance—*participation in the fraudulent intent by the grantee—evidence thereof.* Direct and positive evidence that the grantee of property is guilty of participation in the fraudulent intent of the grantor in making the sale to defraud creditors, is not required in order to avoid the sale. Fraud on the part of the grantee or purchaser may be shown by facts and circumstances from which it may be inferred.

2. Same—*the particular case.* A father made a sale of all his personal estate liable to execution, to his son, aged about twenty-three years, and two days afterward conveyed to him his farm of one hundred and forty-nine acres, subject to the homestead right, for the avowed purpose of defrauding his creditors. The son, at the time, had but little money or property, and was single, and resided with his parents on the place, who continued on the same for about a year thereafter. He paid nothing on the personal estate, but was to pay the incumbrances thereon. The father afterward conveyed him the homestead right in the farm, and the son claimed to have paid $250 in wages due him from the father, and $1200 in money, all of which he derived from the use of the property so conveyed to him. He knew of his father's indebtedness, and that he was divesting himself of all his property: *Held*, that the facts and circumstances, and the relation and situation of the parties, justified a decree finding that the son received the conveyances knowingly, in aid of the fraudulent purpose of his father.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. Isaac G. Wilson, Judge, presiding.

Mr. John A. Russell, and Messrs. Sherwood & Jones, for the appellant:

Knowledge on the part of the grantee, of the fraudulent intent and design on the part of the debtor, and his participation in the execution of that intent, are essential to render the transaction fraudulent as to appellant. Rev. Stat. chap. 59, sec. 5; *Ewing* v. *Runkle*, 20 Ill. 448; *Meyer* v. *Kinzie*, 26

id. 36; *Gridley* v. *Bingham,* 51 id. 153; *Miller* v. *Kirby,* 74 id. 242; *Hatch* v. *Gordon,* 74 id. 414; *Matthews* v. *Gordon,* 88 id. 602; *Grant* v. *Bennett,* 96 id. 513; *Sterling* v. *Ripley,* 3 Pinney, 155; *Mehlhop* v. *Pettibone,* 54 Wis. 652.

More than suspicions are required to prove fraud. The evidence must be clear and cogent, and must leave the mind well satisfied that the charge is true. *Shinn* v. *Shinn,* 91 Ill. 477; *Hatch* v. *Gordon,* 74 id. 414.

Fraud is never presumed when the transaction can be reconciled with honesty. *Mey* v. *Gulliman,* 105 Ill. 272; *Hyde* v. *Chapman,* 33 Wis. 391; *Robert* v. *Morriss,* 27 Mich. 305.

The declarations of the vendor made after the conveyance are not admissible. *Munn* v. *Phillips,* 42 Ill. 123; *Wheeler* v. *McCorristen,* 24 id. 41; *Rust* v. *Mansfield,* 25 id. 336; *Meyer* v. *Kinzie,* 26 id. 36; *Simpkins* v. *Rodgers,* 15 id. 397; *Gridley* v. *Bingham,* 51 id. 54; *Jewett* v. *Cook,* 81 id. 260.

Messrs. BOTSFORD & WAYNE, for the appellees:

The declarations of the grantor are competent against himself, and were rightfully admitted. *Bishop* v. *Redmond,* 83 Ill. 157; *Daniels* v. *McGinnis,* 97 Ind. 549; *Richl* v. *Evansville,* 104 id. 70.

It is further claimed by appellant, that there is no sufficient proof in the record of guilty knowledge, on the part of the son, that his father intended to delay or defraud his creditors. A fraudulent intent on the part of the purchaser is not always necessary to be established to defeat the sale, nor is it necessary to prove such intent by direct evidence. It is sufficient if it be shown there was a fraudulent intent, and that he had notice of such facts as would put a man of ordinary prudence upon inquiry, which inquiry, made with ordinary diligence, would have led to a knowledge of the fraudulent purpose or intent of the seller. *Zuvers* v. *Lyons,* 40 Iowa, 510; *Jones* v. *Hethington,* 45 id. 610.

The fact that the vendee testified that the conveyance was made, and accepted by him, in good faith and without fraudulent intent, will not always avail the vendee. But the court will look at all the facts and circumstances to determine what the intent of both parties was, as gathered from these. The following are cases directly in point: *Bell* v. *Devore,* 96 Ill. 217; *Lee* v. *Swift,* 65 id. 330; *Phelps* v. *Curts,* 80 id. 109; *Mann* v. *Ruby,* 102 id. 348; *Fleming* v. *Hiob,* 3 Bradw. 390.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a creditor's bill, filed in the circuit court of Kane county, by John McEwen and James McEwen, against Samuel McEwen, John M. Treadwell and Henry A. Treadwell, for the purpose of reaching and applying the property of John M. Treadwell to the payment of judgments against him, in favor of the complainants, which property it was claimed had theretofore been fraudulently transferred by the said John M. to his son, Henry A. Treadwell, to delay and hinder the creditors of the former.

On August 1, 1874, John M. Treadwell became surety for Samuel McEwen on an executor's bond, in the sum of $6000, given by the latter as executor of the last will and testament of Elizabeth McEwen, deceased. On June 19, 1878, Samuel McEwen, as executor, was ordered by the county court to pay to James McEwen $404.35, and to John McEwen $504.35, as their distributive shares of the estate of Elizabeth McEwen, their mother. The executor failed to comply with the order. On May 3, 1883, in actions on the executor's bond, John McEwen recovered the sum of $661.62, and James McEwen the sum of $522.42, as damages against the obligors. Executions upon the judgments were returned *nulla bona,* and thereupon the present bill was filed. On March 10, 1877, John M. Treadwell made a bill of sale of all his personal property that was subject to execution, to Henry A. Treadwell, his son,

and on March 12, 1877, the former conveyed to the latter the farm on which he (John M. Treadwell) was living, of about one hundred and forty-nine acres, reserving the homestead right. On August 26, 1879, John M. Treadwell and his wife made a deed of the same premises to Henry A. Treadwell, including a release of the right of homestead. The circuit court, on final hearing, upon proofs taken, found the conveyance of the real estate was fraudulent as against creditors, and decreed in favor of the complainants. On appeal to the Appellate Court for the Second District, the decree was affirmed, and the defendants appealed to this court.

The evidence shows that the conveyance of this real estate by John M. Treadwell to his son, was made to defraud creditors,—that it was made with the specific intent to defeat the collection of this particular liability upon the executor's bond. He had before made an offer to the complainants of less than one-half the amount of their claims, saying they had better take it,—that if they did not, they would be sorry; that he was going to fix himself, and put everything out of his hands. And this he did, by the above transfers to his son. But it is said that it is not enough to show fraud on the part of the grantor,—that to avoid the conveyance to the grantee he also must be guilty of fraud, and that there is no evidence of the grantee's participation in the fraud. There is no direct and positive evidence of it, but such evidence is not required. Fraud may be shown by facts and circumstances from which it may be inferred; and the inquiry is to be, whether the circumstances in this case are sufficient to warrant the inference that Henry A. Treadwell was privy to the fraudulent purpose of his father.

Henry A. Treadwell, at the time of the conveyance, March 12, 1877, was unmarried, about twenty-three years of age, and was living with his parents on the place, and the parents continued afterwards to reside there until in February, 1878, when Henry A. got married. By this conveyance of real estate, and the

bill of sale of personal property made two days before, the father divested himself of all his property subject to execution, and placed it in the hands of his son. The farm was a valuable one, situated two miles north-west of Elgin, in Kane county, and having on it a brick dwelling house, which cost from $3500 to $4000. All the means the son then had, according to his own statement, was a few hundred dollars and a pair of horses. The consideration of the sale of the personal property was the assumption of the incumbrance upon it, as is stated. The consideration for the conveyance of the land is indefinite and not entirely satisfactory, as stated by Henry A. Treadwell. He says he thinks he was to give about $8600 for it, or something of that kind; that he assumed two mortgages that were on the farm, one of $2000 and one of $4000, and over one year's back interest, at ten per cent, the taxes then due, over $60, $250 his father owed him for wages, and that he paid his father $1200 afterward. With the exception, perhaps, of that $250, he does not appear to have paid anything more than what was made off from the place. He states, himself, that he does not know of any money that he got that spring, or that he has had since, that he did not get off the farm in some way or shape. He knew of his father's large indebtedness, that by the conveyances to him John M. Treadwell divested himself of all his property, and was left without any means to pay his debts. John M. Treadwell made the conveyances with the actual and before declared purpose of putting his property out of his hands, so that it could not be reached by his creditors. The son was all the while a member of the father's household.

From the relation and situation of the parties, and all the surrounding circumstances, we can not say that the inference was unwarrantable that the son received the conveyances knowingly, in aid of the fraudulent purpose of his father.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*