## Emma C. Youngs et al. v. The Sexton National Bank of St. Joseph, Missouri.

1.  FRAUDULENT CONVEYANCES—*Evidence of Participation by the Grantee.*—It is not required that there should be direct and positive evidence that the grantees in an alleged fraudulent conveyance participated in the fraud; the fact may be shown by circumstances from which it may be inferred.

**Bill in Aid of Execution.**—Appeal from the Circuit Court of Ogle County; the Hon. JOHN D. CRABTREE, Judge, presiding.  Heard in this court at the December term, 1894.  Affirmed.  Opinion filed May 28, 1895.

BAXTER & GARDNER, WM. BARGE and BURTON F. PEEK, attorneys for appellants.

J. C. SEYSTER, attorney for appellee.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a bill in equity by appellee against appellant to set aside several sales and deeds to lands from Ogden B.

Young, the grantor, to appellants severally, in aid of an execution at law against him in the Ogle County Circuit Court of September 9, 1892, for $5,105.50. The facts as disclosed by the evidence are in substance as follows: The claim of the appellee made in the bill is that the several conveyances were made with a fraudulent intent by both the grantor and grantees to hinder and delay the creditors of Ogden B. Young, and especially the above mentioned judgment of the appellee. There were five separate deeds made and executed by said Ogden B. Young severally to his three sons, one daughter and his wife for separate parcels of the realty of the said Young, and the sale of all his personal property of over $1,700 to one of his sons. The conveyances were all made within four days after Young received notice of his note being placed in the hands of an attorney for collection. These conveyances disposed of all his real estate, consisting of 344 acres of land worth in the neighborhood of from $18,000 to $20,000, and all his personal property except a driving horse. The different notes that he took from his sons were claimed to be hypothecated and some of them returned to them in consideration of unimproved lands in Florida. The court below found the equities in favor of the complainant and set aside the conveyances, and decreed that the complainant be authorized to proceed on his *scire facias* issued on said judgment to levy upon and sell all the said real estate for the payment of the judgment and costs, subject to mortgages, and respondents to pay the costs. From such decree this appeal is taken. The appellants seek to justify and uphold those sales for different reasons: The one of twenty-two acres deeded to his wife for a consideration of $1,500, on the ground that it was to repay money borrowed from her some years before, and the one to his daughter, Bertha E., for a consideration of $1,000, of twenty-two acres, on the ground that he was paying her a debt for several years' services after she became of age, and to his sons on the grounds that they were *bona fide* purchasers of the lands. It appears from the evidence that Ogden B. Young was security on a note for his brother,

George Young, on which the judgment was obtained, and that shortly after he received notice that it was in the hands of an attorney for collection he set to work to divest himself of all his property and had executed the five several deeds mentioned, on his own motion, without any or very little conference with the grantees, all members of his own family, and then parceled out the deeds to them as mentioned. After having the deeds executed they were recorded. He had but little conference with his wife in regard to the sale of the twenty-two acres to her, and there was no accounting with her for any amount he owed her, and she had no note against him, and no price of sale for the land was agreed upon. As to the deed to his daughter there was little or no conference about the sale of the land to her; she took the deed apparently because her father wanted her to accept it, and it is very doubtful whether he owed her anything for wages; it appears to us beyond a doubt that the two deeds to his wife and daughter were fraudulent devices on his part to evade the payment of the note. We also think after a careful perusal of the evidence that the several deeds to his sons were made for the same purpose. It is not denied by the sons in their testimony, or at least two of them, that they may have had a suspicion or a private opinion of the fraudulent intention of their father in making the conveyances, although they claim that they did not know that he had a fraudulent intention in doing so, but all parties knew of the debt and the circumstances under which the father was placed, and must have known, unless they blindly closed their eyes, what his intentions were. They all knew that he was making a sale of his entire real estate and personal property in a strange and an unusual manner for a man in his condition, who was in good health and in good financial circumstances. It is not required that there should be direct and positive evidence that the grantees participated in such a fraud, but the fact may be shown by circumstances from which it may be inferred, and the inquiry is as to whether the circumstances in this case are sufficient to warrant the inference. The above principle is

fully held by the Supreme Court in Tredwell v. McEwen, 123 Ill. 253. We think that no impartial mind, after reading the entire evidence, could come to any other conclusion than that the conveyances were made by Ogden B. Young with the fraudulent intent and purpose of hindering and delaying the collection of the appellee's claim, and that the several grantees all participated in such fraud and willingly attempted to assist him in carrying out his purpose. We do not think it is necessary to go into any further critical examination of the evidence in the case, deeming the observations we have made sufficient. The decree of the court below is therefore affirmed.