Peter Wojtas, a Minor, by Walerya Wojtas, his Mother and Next Friend, Defendant in Error, v. Peter Rachel et al., Defendants. Peter Rachel and Mary Rachel, Plaintiffs in Error.

Gen. No. 35,697.

150

 Opinion filed June 28, 1932.

GUERINE & BRUST, for plaintiffs in error; GUY C. GUERINE, PAUL W. BRUST and SIDNEY R. TARKOFF, of counsel.

GALLAGHER & McDEVITT, for defendant in error.

MR. PRESIDING JUSTICE KERNER delivered the opinion of the court.

March 23, 1928, defendant in error recovered in the superior court of Cook county a judgment against Peter Rachel for $3,500 in an action in tort for personal injuries received by Peter Wojtas on December 13, 1924, by being struck by an automobile driven by said Peter Rachel. April 23, 1928, defendant in error sued out of said court a writ of *capias ad satisfaciendum* against Peter Rachel, and June 22, 1928, the sheriff of Cook county executed the writ by arresting Peter Rachel, who thereafter filed his petition in

the county court of Cook county under the Insolvent Debtors' Act, Cahill's St. ch. 72, and filed a schedule of all his assets, containing a list of personal property valued at less than $400, and was thereupon relieved from imprisonment. August 13, 1928, defendant in error filed his creditor's bill which alleged that said judgment still remains unpaid and in full force and effect, and that said Peter Rachel possesses real estate or some equitable or legal interest in real estate not disclosed by said schedule (describing certain real estate), and that he has money on hand and in some bank or held for his use and benefit, and that he is the equitable owner of bonds of corporations and notes executed by individuals, and seeks in particular to reach the interests of Mary Rachel, John Kapka and Ludwig Rachel in certain real estate described in the bill, and also seeks to reach certain personal property in the possession of the Melrose Park State Bank and Citizens State Bank.

The defendants, Peter Rachel, Mary Rachel, Ludwig Rachel, Melrose Park State Bank and Citizens State Bank, answered, and the cause referred to a master, who reported as his conclusions from the facts found that prior to the rendition of said judgment Peter Rachel purchased a piece of real estate which he subsequently sold for $5,000, and that with this money he purchased a parcel of land in Bellwood, Illinois, in which he conducted a general store, during which time he was employed as a carpenter, while Mary Rachel was active in the management and operation of said store; that this property was sold on August 31, 1925, to George E. Brannan for $21,762.80, which sum was paid by check, payable to the order of Peter Rachel and cashed by him at the Citizens State Bank; that thereafter a savings account was opened in the name of Mary Rachel, and there was deposited in said account on September 2, 1925, $8,000, which was with-

drawn on September 18, 1925; that $5,000 was redeposited in said account October 7, 1925, and thereafter withdrawn by Mary Rachel; that prior to January 1, 1923, Peter Rachel had a savings account with the Melrose Park State Bank and that on September 1, 1925, he deposited $1,200; September 5, 1925, he deposited $10,000, the proceeds of the Brannan check, and September 5, 1925, he had a balance in said bank of $14,930; that with the funds withdrawn from the two accounts, the building in Bellwood, which had been sold to Brannan, was repurchased and moved to a lot at 3521 Adams street, where the building was remodeled and enlarged, and Peter Rachel and Mary Rachel established in this building another general store, money for this purpose being withdrawn from the said several bank accounts. That the savings account of Peter Rachel opened with the Melrose Park State Bank was continued in his name until April 20, 1925, at which time he had on deposit a balance of $4,600.82, and on that date all of said balance was transferred to another account under the name of John Kraus; that out of the money so deposited in the name of John Kraus, certain described real estate was purchased of Stanislawa Walczyk and Frank Walczyk, her husband, and July 4, 1925, the title conveyed to Mary Rachel; that certain other real estate was conveyed by Sebastino Lorenzo and his wife, and Louis Senese, Jr., and his wife, August 4, 1925, to Mary Rachel, and certain other real estate was conveyed by Thomas J. Duffy to Mary Rachel on December 6, 1927; that the following real estate mortgage loans consisting of bonds, principal notes, interest notes and trust deeds securing them, were purchased of the Melrose Park State Bank: Tony Slabis loan purchased October 10, 1925, for $9,000; L. Pottinger loan purchased November 3, 1926, for $4,000; Elmer W. Cone loan purchased August 11, 1927, for $4,500; Glen Ellyn bond purchased October 10, 1925, for $1,000; William

loan purchased August 11, 1927, for $500; Pearson bonds purchased September 14, 1929, $3,000; Pearson bond No. 15 purchased September 22, 1928, for $500; No. 30 Antoinette Apartments, $300; note of Joe Cimino for $3,000, all of said purchases being in the name of plaintiffs in error, titles to which were taken in the name of Mary Kolczock, that being the maiden name of Mary Rachel.

That the store at 3521 Adams street and the funds derived therefrom were the property of Peter Rachel, and all of the bonds and all of the mortgages are the property of said Peter Rachel; that title to said real estate was taken in the name of Mary Rachel for the purpose of concealing the assets of Peter Rachel from defendant in error and to hinder and delay him in the collection of his said judgment, and that the equitable title to said property is in said Peter Rachel, and that said Mary Rachel is holding the title to said real estate and the title to said real estate bonds and mortgages as trustee for said Peter Rachel for his use and benefit; that the funds used for the purchase of mortgages, bonds and real estate in the name of Mary Rachel belong to Peter Rachel; that the bank account opened in the name of John Kraus was in fact the account of Peter Rachel, and that the moneys withdrawn therefrom used in the purchase of various mortgages and bonds were the funds of Peter Rachel and the master recommended that a decree be entered in accordance with his findings and conclusions. Objections to the report were ordered to stand as exceptions. There was a hearing on the exceptions, which were overruled, and the report was confirmed and a decree was entered accordingly. To reverse this decree Peter Rachel and Mary Rachel sued out a writ of error to the Supreme Court, which court on December 1, 1931, transferred the cause to this court.

At the outset it is contended that where a judgment creditor seeks to have a judgment paid out of equitable

assets of a judgment debtor an execution must have been issued and returned unsatisfied in whole or in part and many cases are cited in support of this contention. It is true that a court of equity will not lend its aid where there is an adequate remedy at law, and that it requires that the plaintiff in the judgment shall have made a bona fide attempt to collect his debt by execution against the property of the defendant. The object of the proper return of the execution is to show that the judgment creditor has exhausted all his remedies at law before he applies to the chancery courts for relief. Otherwise it would not appear but that the party has a complete remedy at law. (*Newman v. Willetts,* 52 Ill. 98; *Detroit Copper & Brass Rolling Mills v. Ledwidge,* 162 Ill. 305; *Durand & Co. v. Gray, Kingman & Collins,* 129 Ill. 9; *Scheubert v. Honel,* 152 Ill. 313.) The authorities hold, however, if the judgment debtor wishes to take advantage of that defense he must set it up in his answer, and if the objection is not presented by plea or demurrer in the first instance it cannot be urged on error. (*Hart v. Oliver,* 296 Ill. 209, 214; *Birney v. Solomon,* 348 Ill. 410, 413, 414.) The subject matter of a creditor's bill is not wholly foreign to a court of equity, and the rule that equity will not take jurisdiction where a complete remedy exists at law is intended for the protection of the court and not for the purpose of shielding defendants from their just obligations (*Curtis v. LeMoyne,* 248 Ill. App. 99, 103), and the objection comes too late after the judgment debtor has filed an answer without taking the exceptions, and the court may, if it sees proper, proceed to grant relief notwithstanding there may be an adequate remedy at law, if the relief sought is not of such character as to be wholly foreign to chancery jurisdiction. (*Hart v. Oliver, supra,* 214, 215.) In the instant case Peter Rachel demurred to the bill, which being overruled, he answered, and in his answer he

admitted his insolvency and did not raise the question that defendant in error had an adequate remedy at law. The other plaintiff in error answered the bill, but she, too, did not raise any defense of inadequacy of remedy at law. This defense is presented here for the first time. It comes too late. (*Kaufman v. Wiener,* 169 Ill. 596, 602; *Crawford v. Schmitz,* 139 Ill. 564, 572; *Smith v. Love,* 286 Ill. 570, 572; *McIntyre v. McIntyre,* 287 Ill. 544, 548.) Furthermore, in view of the fact that Peter Rachel admitted he was insolvent, the issuance of an execution against his property would have amounted to a useless act. Under such circumstances, it was held it was unnecessary to issue an execution on a judgment and have it returned unsatisfied before the creditor could maintain a creditor's bill. (*Bay v. Cook,* 31 Ill. 336, 348; *Federal Land Bank v. Tawzer,* 129 Kan. 93; *Steele v. Reid,* 284 Mo. 269.) The judgment, execution and return are but the best evidence of these facts, but they are not the only method or the only evidence by which it may be shown that the remedy at law is wholly inadequate and incomplete. (*Distillery Co. v. Zeiger,* 9 N. M. 31, 34.)

It is next claimed that Walerya Wojtas, the mother and next friend of the plaintiff in error, had no right to file the bill and collect a judgment on his behalf, and that the court erred in providing that payment be made to the defendant in error or his solicitors. The decree in the instant case provided for the appointment of a receiver of the real and personal property of Peter Rachel, and it also provided that if Peter Rachel did not pay Peter Wojtas, a minor, within three days from the entry of the decree, the amount found due by the decree, then the receiver was authorized to pay the defendant in error the amount found due; and further provided that said receiver shall pay to the defendant in error, or to his solicitors, the amount due under the decree. There is no force in this objection

as under paragraph 18, ch. 64, Cahill's Illinois Revised Stats. 1931, a next friend may prosecute any suit or proceeding without previous authority or appointment of the court, and while it is true that under our statutes the only person authorized to receive or take charge of the property or estate of a minor is the legal qualified guardian, and that no one but the legal guardian of an infant has authority to receive payment and enter satisfaction of a judgment recovered in favor of such infant and that the duty of the next friend begins and ends with the prosecution of the suit unless by statute he is authorized to take further action after the termination of the suit (*Paskewie v. East St. Louis & S. Ry. Co.*, 281 Ill. 385, 387), nevertheless the fact that the decree did provide that the amount found due be paid to defendant in error, who is a minor, is no ground for reversing the decree, as the satisfaction of the decree is to be taken by the receiver or master and it will be the duty of the receiver or master to see to it that he receives a valid and binding release or satisfaction of the decree.

It is next contended by plaintiffs in error that the finding in the decree that the bonds, notes, mortgages, store and real estate purchased or held in the name of Mary Rachel were the property of Peter Rachel is not supported by the evidence and that the defendant in error has failed to prove the material allegations of his bill. It is not necessary that the allegations of the bill be proven by direct evidence; they may be proved by circumstantial evidence, that is by proof of such circumstances as give rise to a reasonable interference in the mind of the truth of the facts alleged and sought to be proved. "Fraud may be shown by facts and circumstances from which it may be inferred." (*Treadwell v. McEwen*, 123 Ill. 253, 256.) Agreements to perpetrate fraud are not made in the open—they are secret arrangements. As a result it frequently occurs

that while fraud cannot be shown by direct evidence, yet it may be shown by proof of facts and circumstances from which the jury may rightfully infer the existence of the fraud charged. (*Zwick v. Catavenis,* 331 Ill. 240, 248.) Bearing in mind the principles thus announced, and after a careful examination of the evidence in the record, we are of the opinion that the master's findings, approved by the court on the hearing, are fully supported by the evidence, and we would not be warranted in reversing the decree on the ground that the evidence does not support it. The master saw and heard the witnesses. A court of review should be slow in disturbing the conclusions of a master upon the facts unless it can be said that his conclusions are clearly contrary to the probative force of the evidence. (*Union Colliery Co. v. Fishback,* 299 Ill. 165; *Gruenenfelder Lumber Co. v. Golden,* 260 Ill. App. 313.)

It is also urged that the defendant in error had no right to complain of any conveyances of property made by Peter Rachel unless at the time of conveyance he was a creditor of Peter Rachel. While it is true that the owner of property may at any time give the same to anyone he chooses, so long as he thereby injures no then existing creditor, and no subsequent creditor can call it in question, unless the donor is guilty of an actual fraudulent intent, and such creditor is thereby injured (*Bittinger v. Kasten,* 111 Ill. 260; *Chicago Daily News Co. v. Siegel,* 212 Ill. 617), nevertheless under the evidence in the instant case, we are of the opinion this claim is not sustainable, as a conveyance by a debtor to another in trust for him, may be assailed by future as well as existing creditors. The same point was made in *Jones v. King,* 86 Ill. 225, and in disposing of the question, the court said (p. 229): "We understand the rule to be settled, that where the conveyance is colorable merely, and a secret trust and confidence exists for the benefit of the grantor, the con-

veyance will be held void both as against precedent and subsequent creditors." In *McKey v. Cochran,* 262 Ill. 376, 384, it was said: "A conveyance of real estate by a debtor to another, to be held wholly or in part in trust for him, is a fraud on creditors whether so intended or not, as it places beyond their reach a valuable right and gives to the debtor the beneficial enjoyment of what rightfully belongs to them. . . . In such a case the conveyance is void as to existing and subsequent creditors." (See also *Bay v. Cook,* 31 Ill. 336; *Morrill v. Kilner,* 113 Ill. 318; *Gordon v. Reynolds,* 114 Ill. 118, 127, and *Highley v. American Exchange Bank,* 185 Ill. 565.) After a careful examination of the record, we think the chancellor was fully justified in reaching the conclusion that the real estate conveyed to Mary Rachel and described in the decree, as well as the bonds, principal notes, interest notes and trust deeds securing them, purchased in the name of the plaintiffs in error, titles to which were taken in the maiden name of Mary Rachel, were merely colorable and that the beneficial interest and real ownership was in Peter Rachel.

It is next claimed that because the defendant in error called the plaintiffs in error as witnesses their testimony in their favor must be considered, and if there is no evidence to the contrary it must be taken as true. There can be no question such is the rule (*Sawyer v. Moyer,* 109 Ill. 461; *Luthy & Co. v. Paradis,* 299 Ill. 380), but by placing them on the stand, defendant in error was not barred from proving a state of facts differing from that sworn to by the plaintiffs in error (*Podolski v. Stone,* 186 Ill. 540; *People v. Paul,* 143 Ill. App. 566, 570, and cases cited), and from our examination of the record we are convinced he has done so.

It appears from the record that a temporary injunction was issued October 15, 1928, before the taking of the evidence before the master, restraining plaintiffs

in error from opening any safety deposit box leased by them and from disposing of any of their assets, and as a condition precedent required defendant in error to enter into a bond of $500, and such a bond was approved, signed by defendant in error by his next friend, and the injunction issued. This temporary injunction was made permanent in the decree appealed from upon the filing of a bond for $1,000. The $1,000 bond has not been filed or approved. It is now argued that the decree should be reversed because the signing of the bond by defendant in error by his next friend was improper. There is no merit in this contention. The plaintiffs in error did not appeal from the order of October 15, 1928,.issuing the injunction, and they cannot now question that order.

It is finally contended that the decree must be reversed because Cecelija Rachel was not made a party defendant. The report of the master found that a certain bill of sale from Mary Rachel to Cecelija Rachel was made for the purpose of defrauding defendant in error and for the purpose of preventing a levy and sale of the grocery store, and that Cecelija Rachel is holding the store as trustee for Peter Rachel. Ludwig Rachel, husband of Cecelija Rachel, was made a defendant and testified before the master. Cecelija Rachel was not called as a witness and did not testify. Neither of the defendants filed an answer in which they averred the omission of any necessary party. The objection of the nonjoinder of Cecelija Rachel as a party was first made here. When thus delayed such an objection will receive little favor from a reviewing court, and to be of avail in such case it must appear that the failure to make the omitted person a party will result in depriving that person of some material right. As she was not made a party defendant, there is no estoppel by the decree against her. Her rights, if any, are in no way jeopardized. (*Washburn & Moen Mfg.*

*Co. v. Chicago Galvanized Wire Fence Co.*, 109 Ill. 71, 85; *Chicago, M. & N. R. Co. v. National Elevator & Dock Co.*, 153 Ill. 70; *State Nat. Bank v. United States Life Ins. Co.*, 238 Ill. 148; *Law v. Neola Elevator Co.*, 281 Ill. 143.)

Finding no reversible error in the record the decree of the superior court is affirmed.

*Affirmed.*

SCANLAN and GRIDLEY, JJ., concur.